#26559-a-DG

**2013 S.D. 72**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                                    Plaintiff and Appellee,

    v.

EARL DAVID DOWTY, JR.,                                    Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
MELLETTE COUNTY, SOUTH DAKOTA
\* \* \* \*

THE HONORABLE MARK BARNETT
Judge
\* \* \* \*

MARTY J. JACKLEY
Attorney General

KELLY MARNETTE
Assistant Attorney General
Pierre, South Dakota                                    Attorneys for plaintiff
                                          and appellee.

TODD A. LOVE of
Bettmann Hogue Law Firm, Prof. LLC
Rapid City, South Dakota

    and

LARRY D. HOLLMANN of
Hollmann and Hollmann
Chamberlain, SD                                    Attorneys for defendant
                                          and appellant.

\* \* \* \*

CONSIDERED ON BRIEFS
ON AUGUST 27, 2013
OPINION FILED **10/09/13**

#26559

GILBERTSON, Chief Justice

[¶1.]     Earl Dowty and his stepson Wayne Richards were jointly charged with 13 felonies as a result of three burglaries committed in Mellette County, South Dakota. Richards pleaded guilty to two charges stemming from one of the burglaries. Prior to trial, Dowty filed a motion to sever charges and for relief from prejudicial joinder. The trial court denied Dowty's motion, and the case proceeded to trial. At trial, Dowty moved for judgment of acquittal on all charges stemming from two of the burglaries. This motion was also denied by the trial court. After being convicted on 9 of the 13 felonies, Dowty was sentenced to a total of 45 years in the South Dakota State Penitentiary. Dowty appeals, arguing the trial court erred in denying his motion for judgment of acquittal and his motion to sever charges.

## FACTS

[¶2.]     During a 25-day period in October and November 2010, three homes were burglarized in rural Mellette County. The homes were located within 20 miles of each other. The first burglary occurred on October 30, 2010. Upon returning home at approximately 12:30 a.m. on October 31, 2010, Peter and Marla Ferguson realized their home had been burglarized. Several items were missing from the Ferguson home, including two televisions, two jewelry boxes, three guns, Marla's work bag,[1] and all the meat from their freezer. The Fergusons reported the burglary to the Mellette County Sheriff's Office, which initiated an investigation.

---

1.     Marla was employed as a home health aide. Her work bag was made of cloth and had a brown buffalo skull imprinted on the side. It contained client information, Marla's wallet, medical instruments, and other items.

-1-

[¶3.]    On November 6, 2010, Jeannine Woodward and Rose West left their home around 9:00 a.m. When Woodward and West returned home at approximately 4:00 p.m., they discovered that several items were missing from the freezer and that seven guns had been stolen. Outside, Woodward and West noticed blood trailing from the driveway to the front door. However, there was no blood inside their home. During the investigation of the burglary, the Mellette County Sheriff's Department collected a sample of the blood from the front door for DNA testing. At that time, no suspects were identified for either burglary.

[¶4.]    The next burglary occurred on November 24, 2010. At approximately 7:00 p.m., Michael Williams returned home after having dinner with his family at a co-worker's house. Williams's wife and children had a separate vehicle, and planned to return home sometime after Williams. Upon entering his home, Williams immediately saw two men he did not recognize. One of the two men was rifling through the freezer, while the other man was attempting to remove the television from the wall. The man by the freezer turned around and pointed a handgun at Williams. Subsequently, Williams saw the man by the television reach into his coat pocket. Williams then saw a laser beam flash across the wall.[2] Williams closed the front door and started running away from the house. While Williams was running, he saw the laser beam shining near him on the ground and was then shot twice in the leg. Despite his injuries, Williams was able to access the handgun he carried with him and fire one shot in the air. Williams then called 911

---

2.    Williams owned a handgun that had a laser sight, which could be activated while the handgun was being gripped.

on his cell phone. The two men fled the scene while Williams waited for help. Once law enforcement arrived, Williams was transported to the hospital for treatment. He eventually recovered from his injuries. Items stolen from Williams's home included the handgun with the laser sight, a second handgun, jewelry, coins, and a flashlight.

[¶5.] After Williams was transported to the hospital, law enforcement began investigating the burglary and shooting. Agent Jason Jares, a law enforcement officer employed by the South Dakota Division of Criminal Investigations (DCI), led the investigation. One of the items recovered from the scene was a partially smoked cigarette butt that had been found near the deck outside of the home. The cigarette butt was sent to the DCI forensic lab for DNA testing.

[¶6.] As the investigation progressed, Earl Dowty and his stepson, Wayne Richards, became the primary suspects in the burglary and shooting that took place at Williams's home. Specifically, Dowty was suspected of being the individual Williams observed standing at the freezer. Richards was suspected of being the individual Williams observed attempting to remove the television from the wall, who shot Williams as Williams ran away from the house. Both Dowty and Richards lived with Dowty's wife (Richards's mother), Rose Leading Fighter, at her home in Parmelee, South Dakota, which is located within an Indian reservation. Because the home was located on reservation land, Agent Jares sought assistance with the investigation from a Federal Bureau of Investigation (FBI) agent. The FBI agent obtained a federal search warrant for Leading Fighter's home that permitted law enforcement to search for items stolen from Williams's home.

[¶7.] The search warrant was executed on January 8, 2011. During the execution of the search warrant, law enforcement did not locate any of the items that had been stolen from Williams's home. Nevertheless, while searching the home, law enforcement discovered a tan cloth bag with a buffalo skull imprinted on the side. The bag contained various items including documents with the name "Marla Ferguson" on them, a wallet, and a jewelry box. Leading Fighter consented to law enforcement taking possession of the bag and its contents.

[¶8.] Before executing the search warrant, Agent Jares was unaware of the burglaries of the Ferguson and Woodward/West homes. However, Agent Jares was informed of these two burglaries after recovering the bag containing the documents with Marla Ferguson's name. Upon learning of these unsolved burglaries, law enforcement realized that some of the items they had seen in plain view while executing the search warrant at Leading Fighter's home were consistent with items that had been stolen from the Ferguson home. Ultimately, Leading Fighter consented to law enforcement taking custody of a jewelry box and a television that had been stolen from the Ferguson home.

[¶9.] As investigations of the three burglaries continued, law enforcement obtained additional evidence that connected Dowty and Richards to the burglaries. For example, law enforcement discovered Dowty and Richards had traded and pawned various guns that had been stolen during the burglaries of the Ferguson, Woodward/West, and Williams homes. Specifically, on November 23, 2010, Richards pawned a rifle that had been stolen from the Woodward/West home. Dowty was with Richards at the time, but Dowty remained outside the pawn shop

in a vehicle. The next day, Dowty pawned a rifle that had also been stolen from the Woodward/West home. Richards was in the pawn shop with Dowty at the time Dowty pawned the rifle. Furthermore, on two separate occasions during fall 2010, Dowty traded stolen guns to Jason Little Elk in exchange for Little Elk performing repair work on Dowty's vehicle. The first gun Dowty traded Little Elk was a rifle that had been stolen from the Ferguson home. Richards was with Dowty at the time of the trade. In fact, Richards retrieved the rifle and handed it to Little Elk. The second gun Dowty traded Little Elk was the handgun with a laser sight that had been used to shoot Williams.

[¶10.] In addition, samples of both Dowty's and Richards's DNA were sent to the DCI forensic lab to be compared with the blood sample collected at the Woodward/West home and the cigarette butt collected at the Williams home. DNA testing established that the blood sample collected from the front door of the Woodward/West home was a match to Dowty. DNA testing of the cigarette butt collected at the Williams home revealed the presence of DNA profiles from two individuals. The testing established that Richards was the major contributor and Dowty was the minor contributor to the DNA found on the cigarette butt.

[¶11.] By joint information, Dowty and Richards were charged with 13 felonies as a result of the three burglaries.[3] Additionally, Dowty was accused of

3. The joint information charged Dowty and Richards with:

> COUNT I: "FIRST DEGREE BURGLARY and AIDING AND ABETTING"
>
> COUNTS II, VIII, XI: "POSSESSION OF STOLEN PROPERTY (FIREARM) and AIDING AND ABETTING"

<span style="float:right">(continued . . .)</span>

being a habitual offender.  Dowty was arraigned on September 22, 2011, and he

pleaded not guilty to the charges.  Meanwhile, Richards entered into a plea

agreement with the State in which he pleaded guilty to two of the charges

stemming from the burglary and shooting that took place at the Williams home.[4]

[¶12.]    On January 30, 2012, Dowty filed a motion to sever charges and for

relief from prejudicial joinder.  Dowty sought four separate trials: one trial for each

of the three burglaries and an additional trial for the charges related to the shooting

of Williams.  The trial court issued a memorandum decision denying Dowty's motion

on May 2, 2012.  The case proceeded to jury trial on September 24, 2012.  Richards

did not testify at trial.

[¶13.]    At the close of the State's case, Dowty moved for judgment of acquittal

on all charges related to the burglaries of the Ferguson and Woodward/West homes.

Dowty argued that although he was charged with aiding and abetting, the State

---

(. . . continued)
          COUNTS III, IX, XII: "GRAND THEFT (FIREARM) and AIDING AND ABETTING"

          COUNT IV: "ATTEMPTED FIRST DEGREE MURDER and AIDING AND ABETTING"

          COUNT V (in the alternative): "AGGRAVATED ASSAULT and AIDING AND ABETTING"

          COUNT VI: "COMISSION OF A FELONY WITH A FIREARM and AIDING AND ABETTING"

          COUNTS VII, X: "SECOND DEGREE BURGLARY and AIDING AND ABETTING"

          COUNT XIII: "GRAND THEFT (TV SET $1600) and AIDING AND ABETTING"

4.    Specifically, Richards admitted to shooting Williams and pleaded guilty to Counts I and V of the joint information.

failed to present evidence that Dowty acted with another individual in committing the burglaries at the Ferguson and Woodward/West homes.[5] Thus, Dowty asserted he could not be convicted of aiding and abetting. The trial court denied his motion. Ultimately, Dowty was convicted on 9 of the 13 felony counts,[6] and he subsequently admitted to being a habitual offender. The trial court sentenced Dowty to a total of 45 years in the South Dakota State Penitentiary. Dowty appeals, arguing that the trial court erred in denying his motion for judgment of acquittal on all charges related to the burglaries of the Ferguson and Woodward/West homes, and that the trial court erred in denying his motion to sever charges and for relief from prejudicial joinder.

## ANALYSIS AND DECISION

[¶14.]    **1.    Whether the trial court erred in denying Dowty's motion for judgment of acquittal on all charges stemming from the burglaries of the Ferguson and Woodward/West homes.**

[¶15.]    "In reviewing the denial of a motion for judgment of acquittal, we determine 'whether the evidence was sufficient to sustain the conviction.'" *State v. Roubideaux*, 2008 S.D. 81, ¶ 13, 755 N.W.2d 114, 118 (quoting *State v. Nuzum*, 2006 S.D. 89, ¶ 9, 723 N.W.2d 555, 557). Notably, an appellate court is not required to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt" when reviewing the sufficiency of the evidence. *State v. Plenty*

---

5.    Dowty conceded that the State presented evidence establishing that he and Richards committed the burglary and shooting at the Williams home.

6.    Dowty was acquitted on the possession of stolen property charges, and the jury did not return a verdict on the alternative aggravated assault charge.

*Horse*, 2007 S.D. 114, ¶ 5, 741 N.W.2d 763, 765 (quoting *State v. Tofani*, 2006 S.D. 63, ¶ 37, 719 N.W.2d 391, 400). "Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Tofani*, 2006 S.D. 63, ¶ 37, 719 N.W.2d at 400). Consequently, the evidence is insufficient only "when no rational trier of fact could find guilt beyond a reasonable doubt." *Id.* (quoting *Tofani*, 2006 S.D. 63, ¶ 37, 719 N.W.2d at 400). Further, in reviewing the sufficiency of the evidence on appeal, this Court "will not usurp the jury's function in resolving conflicts in the evidence, weighing credibility, and sorting out the truth." *State v. Swan*, 2008 S.D. 58, ¶ 9, 753 N.W.2d 418, 420 (quoting *State v. Pugh*, 2002 S.D. 16, ¶ 9, 640 N.W.2d 79, 82).

[¶16.]     In arguing the trial court erred in denying his motion for judgment of acquittal on all charges related to the Ferguson and Woodward/West burglaries, Dowty reasserts that he was only charged as an aider and abettor with regard to these offenses.[7] Dowty also maintains the State failed to present any evidence

---

7.     Dowty's claim that he was solely charged with aiding and abetting is based on the language used in the joint information. For example, Counts VII and VIII of the information charged:

COUNT VII: SECOND DEGREE BURGLARY (Class 3 Felony)

That on or about the 6th day of November, 2010, in the County of Mellette, State of South Dakota, the Defendants did commit the public offense of SECOND DEGREE BURGLARY, in that they did enter or remain in an occupied structure belonging to Rose West and/or Jeannine Woodward with intent to commit theft therein, and did aid and abet each other in committing the crime of grand Theft in that they did take and execute unauthorized control over property (firearm) of Rose West

(continued . . .)

establishing Richards's participation in the Ferguson and Woodward/West burglaries. Further, Dowty asserts that in order for him to be convicted of aiding and abetting, the State was required to establish the existence of a principal and prove the principal offender committed all elements of the underlying offense, which Dowty claims the State failed to do.

[¶17.] We start out by rejecting Dowty's claim that he was solely charged with aiding and abetting. Although each count alleges Dowty and Richards "did aid and abet each other," the use of this language by the State does not mean that Dowty and Richards were each only charged with aiding and abetting. Instead, when examining the language of each charge and viewing the joint information as a whole, it is apparent that the State's purpose was to jointly charge Dowty and Richards with commission of the offenses, either as principals or as aiders and abettors. *See People v. Delgado*, 297 P.3d 859, 865 (Cal. 2013) (quoting *People v.*

---

(. . . continued)

and/or Jeannine Woodward, contrary to SDCL 22-32-3 and 22-3-3.

COUNT VIII: POSSESSION OF STOLEN PROPERTY (Class 4 Felony)

That on or about between the 30th day of October, 2010 and December 15, 2010, in Mellette County, South Dakota and Todd County, South Dakota, the Defendants did aid and abet each other and commit the public offense of POSSESSION OF STOLEN PROPERTY (firearms) in that they did receive, retain, or dispose of property of another knowing that it had been stolen or believing that it had been stolen in that they did exercise unauthorized control over property of Rose West and Jeannine Woodward, i.e, a Smith and Wesson 0.410 58A (bolt and action) shotgun and a 30-06 760 Gamemaster Rifle Serial #S9161 with intent to deprive them of said property, contrary to SDCL 22-30A-1, 22-30A-7, 22-30A-17(2), and 22-3-3.

*McCoy*, 24 P.3d 1210, 1215-16 (Cal. 2001) (recognizing that "[w]hen two or more persons commit a crime together, both may act in part as the actual perpetrator *and* in part as the aider and abettor of the other, who also acts in part as an actual perpetrator")).

[¶18.]     Furthermore, SDCL 22-3-3.1 abolishes the distinction between principals and accessories to the commission of crime. Specifically, SDCL 22-3-3.1 provides:

> The distinction between an accessory before the fact and a principal, and between principals in the first and second degree, in cases of felony, is abrogated. Any person connected with the commission of a felony, whether that person directly commits the act constituting the offense or aids and abets in its commission, though not present, shall be prosecuted, tried, and punished as a principal.

In *State v. Harris*, 2010 S.D. 75, ¶ 22, 789 N.W.2d 303, 311, this Court acknowledged "[i]t is settled law that a conviction may be supported by proof that the defendant was either an aider or abettor even though the charging instrument charged him as a principal." The reverse is also true. *See Banther v. State*, 977 A.2d 870, 886 (Del. 2009) ("It is well established that a defendant who is indicted as a principal can be convicted as an accomplice and vice versa, if the evidence presented at trial supports the alternative basis for criminal liability."). Thus, even if Dowty's assertion that he was solely charged with aiding and abetting were true, Dowty could still be convicted as a principal.

[¶19.]     In this case, the evidence presented at trial was sufficient to convict Dowty of the offenses stemming from the Ferguson and Woodward/West burglaries under either theory of liability. Although Dowty contends that the State's theory of the case was that Dowty acted alone in committing the Ferguson and

Woodward/West burglaries, a review of the record establishes otherwise. The State's theory of the case was that Dowty and Richards acted together in committing the Ferguson, Woodward/West, and Williams burglaries.[8] Throughout the trial, the jury was presented with a variety of evidence that supported this theory. For example, the jury heard evidence that Dowty and Richards lived in the same residence where property stolen from the Ferguson home was recovered and that Dowty and Richards traveled together to trade and pawn various guns stolen during the burglaries of the Ferguson, Woodward/West, and Williams homes.[9] The jury also heard about DNA evidence from the cigarette butt linking both Dowty and Richards to Williams's home and DNA evidence linking Dowty to the blood collected at the Woodward/West home. The jury was also aware that Richards had admitted to shooting Williams during the burglary of Williams's home.

[¶20.] Based on the evidence presented, the jury convicted Dowty on 9 of the 13 counts charged. Notably, in reaching its verdict, the jury did not have to

---

8. Dowty bases his claim regarding the State's theory of the case on a comment the State made during the sentencing hearing. Specifically, the State asserted: "The evidence showed that Mr. Dowty, he was convicted of three burglaries. Mr. Richards wasn't along on two of them." However, a review of the record indicates this was a misstatement by the State. Throughout the trial, the jury was told repeatedly that Dowty and Richards acted together in committing the Ferguson, Woodward/West, and Williams burglaries. The only time the State ever commented that Dowty acted alone in the Ferguson and Woodward/West burglaries was during the sentencing hearing, which was separate from the jury trial. Thus, as this statement was not even heard by the jury, it has no effect on our review of the sufficiency of the evidence.

9. The jury received an instruction regarding the presumption of guilt arising from possession of recently stolen property. *See State v. Larkin,* 87 S.D. 61, 67, 202 N.W.2d 862, 865 (1972) ("It has long been the rule in this state that possession of recently stolen property is, in itself, a circumstance from which guilt may be presumed.").

expressly decide whether Dowty acted as a principal or as an aider and abettor. Instead, the jury received an instruction on aiding and abetting, which provided the jury with an alternative theory of liability under which to convict Dowty. As previously indicated, evidence is insufficient only "when no rational trier of fact could find guilt beyond a reasonable doubt." *Plenty Horse,* 2007 S.D. 114, ¶ 5, 741 N.W.2d at 765 (citation omitted). In this case, there was sufficient evidence from which a rational juror could have found Dowty guilty of the offenses stemming from the Ferguson and Woodward/West burglaries, either as a principal or as an aider and abettor. Therefore, the trial court did not err in denying Dowty's motion for judgment of acquittal.

[¶21.] **2. Whether the trial court erred in denying Dowty's motion to sever charges and for relief from prejudicial joinder.**

[¶22.] Dowty next argues the trial court erred in denying his motion to sever charges and for relief from prejudicial joinder. Specifically, Dowty asserts that the charges from each of the three burglaries and the shooting charges should all have been severed into four, separate trials because none of the offenses can be properly joined under SDCL 23A-6-23. We disagree.

[¶23.] A trial court's decision to join or sever charges is reviewed under an abuse of discretion standard. *State v. Thompson,* 1997 S.D. 15, ¶ 14, 560 N.W.2d 535, 538. In reviewing Dowty's claim, we first consider whether the charges were improperly joined. SDCL 23A-6-23 specifies the standard for joining offenses. The statute provides:

> Two or more offenses may be charged in the same indictment or information in separate counts for each offense, if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or

-12-

> transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

Thus, SDCL 23A-6-23 provides "three [separate] tests which permit joinder of offenses." *State v. Waugh*, 2011 S.D. 71, ¶ 12, 805 N.W.2d 480, 483 (quoting *State v. Shape*, 517 N.W.2d 650, 654 (S.D. 1994)).

[¶24.] Joinder is appropriate "where separately charged offenses are closely related in time, location, and manner of execution." *State v. Loftus*, 1997 S.D. 131, ¶ 13, 573 N.W.2d 167, 171 (citations omitted). "This test for finding joinder appropriate where the separately charged offenses are closely related in location and manner of execution has been broadly construed." *Id.* ¶ 12, 573 N.W.2d at 170 *(*citing *Shape,* 517 N.W.2d at 654). Another consideration in this analysis is whether the evidence as to each count tends to overlap. *See State v. Dixon*, 419 N.W.2d 699, 702 (S.D. 1988); *United States v. Rodgers*, 732 F.2d 625, 629 (8th Cir. 1984) ("The time period is relative to the similarity of the offenses, and the possible overlapping of evidence.").

[¶25.] Dowty argues that the Woodward/West and Ferguson burglaries are not offenses of the same or similar character as the Williams burglary, because no "violence of any kind was contemplated or employed" in the first two burglaries. He asserts that the first two burglaries were strictly property crimes, while the Williams burglary—because it is associated with the shooting—is a violent crime. Dowty argues that the violence element distinction between first- and second-degree burglary means the offenses charged were not "of the same or similar character," thus precluding joinder under SDCL 23A-6-23. We disagree.

[¶26.]     Although the Williams burglary involved an additional element of violence,[10] the three offenses charged were similar enough in character to satisfy the requirements for joinder under the "of the same or similar character" prong. First, it should be noted that the offenses charged are facially similar: all three are burglary charges, albeit of different degrees.[11] Factually, the burglaries share even more similarity. The three burglaries all involved theft at temporarily unoccupied homes located in rural Mellette County. Similar items were stolen from each home, including frozen food, guns, and jewelry. Guns stolen from all three homes were pawned or traded by Richards and Dowty shortly after each burglary. Items stolen from all of the homes were in Dowty and Richardson's possession. The burglaries were also closely related in location—within a 20-mile radius. Additionally, the three burglaries happened over a relatively short, 25-day period. Lastly, as we discuss below in our review for prejudice, the evidence from each of the burglaries tends to overlap, as evidence of each offense would be admissible in a trial for the other offenses. Given these factors, the burglary offenses were of a similar character and were properly joined.

[¶27.]     Dowty also asserts that the shooting offense cannot be joined to any of the burglary offenses because they are of a different character. However, we agree with the trial court that the Williams shooting and the Williams burglary were

---

10.     Dowty was charged with first-degree burglary in the Williams burglary, elevated from second-degree burglary because the burglary involved a dangerous weapon and the infliction of physical harm on another.

11.     Dowty does not claim error in the joinder of the possession of stolen property charges associated with the burglary charges, so we do not address them separately.

joinable because they are "based on the same act or transaction." The robbery and the shooting were not distinct and independent incidents. The evidence reflects that Williams was shot while Dowty and Richards were carrying out the burglary of Williams's home. The two offenses were so closely related in time, place, and circumstance that the Williams burglary could not be fully understood without relating details of the shooting, and vice versa. As the trial court noted, "[t]he burglary supplies motive for the shooting; the shooting was done with a weapon stolen in the burglary." The trial court did not abuse its discretion by finding that the shooting and the burglary were part of the same act or transaction, and were thus properly joined under SDCL 23A-6-23.

[¶28.]     Nevertheless, even when offenses are properly joined under SDCL 23A-6-23, "SDCL 23A-11-2 provides relief from prejudicial joinder by allowing severance of the offenses." *Shape*, 517 N.W.2d at 654 (citing *Dixon*, 419 N.W.2d at 702). SDCL 23A-11-2 provides:

> If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. In ruling on a motion by a defendant for severance the court may order the prosecuting attorney to deliver to the court for inspection in camera any statements or confessions made by the defendants which the state intends to introduce in evidence at the trial.

A trial court's denial of a motion to sever is reviewed for an abuse of discretion. *Shape*, 517 N.W.2d at 654 (citing *Dixon*, 419 N.W.2d at 702). In the context of a denial of a motion to sever "an abuse of discretion arises only where the party

requesting severance of joined counts can make 'a clear showing of prejudice to substantial rights.'" *Id.* (quoting *Dixon*, 419 N.W.2d at 702).

[¶29.] "The quantum of prejudice that must be shown is high[,]" and "requires more than a showing of a better chance of acquittal at a separate trial." *Waugh*, 2011 S.D. 71, ¶ 13, 805 N.W.2d at 483-84. As this Court previously recognized:

> Any joinder of offenses is apt to involve some element of prejudice to the defendant, since a jury is likely to feel that a defendant charged with several crimes must be a bad individual who has done something wrong. However, if the notion of involuntary joinder is to retain any validity, a higher degree of prejudice, or certainty of prejudice, must be shown before relief will be in order.

*Id.* (quoting *Dixon*, 419 N.W.2d at 703). Furthermore, this Court has concluded that "[w]hen evidence of one crime is admissible in the trial of another crime, . . . there is no prejudice in trying the two charges at the same time." *Id.* ¶ 14, 805 N.W.2d at 484 (quoting *United States v. Tyndall*, 263 F.3d 848, 850 (8th Cir. 2001)).

[¶30.] In this case, Dowty argues that even if joinder of the charges were proper under SDCL 23A-6-23, the trial court erred in denying his motion to sever because he suffered substantial prejudice as a result of the charges being joined in a single trial. In reviewing the trial court's denial of Dowty's motion to sever, Dowty requests that this Court consider a standard utilized by the Eighth Circuit Court of Appeals. The Eighth Circuit has stated that "[s]evere prejudice occurs when a defendant is deprived of an appreciable chance for an acquittal, a chance that the defendant would have had in a severed trial." *United States v. Taken Alive*, 513 F.3d 899, 902 (8th Cir. 2008) (citation omitted).

[¶31.] In support of his claim that he suffered prejudice due to joinder of the offenses, Dowty asserts he "definitely [would have] had an appreciable chance for an acquittal on the charges had they been severed." According to Dowty, the various charges were supported by little to no evidence, and "[b]y allowing the State to combine all charges, . . . the State [wa]s allowed to paint Dowty as a . . . bad person whom the jury was more likely to convict." However, as we noted above, "[a]ny joinder of offenses is apt to involve some element of prejudice to the defendant, since a jury is likely to feel that a defendant charged with several crimes must be a bad individual who has done something wrong." *Waugh*, 2011 S.D. 71, ¶ 13, 805 N.W.2d at 483-84. In this case, the jury was presented separate evidence linking Dowty to each crime, including Dowty's possession and disposal of property stolen from each home, and DNA evidence placing him at the scene of two of the homes shortly before each burglary. Dowty's claim that the joinder of offenses may have caused the jury to view Dowty as a "bad person" is not enough to establish clear prejudice.

[¶32.] Furthermore, even if the charges had been severed as requested by Dowty, evidence of the various offenses would have been admissible at each of the separate trials pursuant to SDCL 19-12-5 (Rule 404(b)).[12] Although SDCL 19-12-5 (Rule 404(b)) prohibits other acts evidence used solely to prove character and

_____

12. SDCL 19-12-5 (Rule 404(b)) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

conformity therewith, "should the evidence prove relevant in any other way[,] it is admissible, subject only to the rarely invoked limitations of Rule 403." *State v. Wright*, 1999 S.D. 50, ¶ 16, 593 N.W.2d 792, 799 (citations omitted). The trial court found that the evidence of each burglary would be admissible in trials for each of the other burglaries, not as prohibited character evidence, but as evidence of a common scheme or plan. "A plan or design can be shown circumstantially with evidence that the defendant committed a series of similar but 'unconnected' acts." *Id.* ¶ 19, 593 N.W.2d at 801 (citations omitted). The plan in this case was for Richards and Dowty to work together to burglarize temporarily unoccupied homes in rural Mellette County, stealing guns, jewelry, and frozen food. Given the similarity of the crimes charged and the crimes' temporal and geographical proximity, evidence of each would be admissible in each severed trial. We therefore conclude that the trial court did not abuse its discretion, because Dowty suffered no clear prejudice to substantial rights by the joinder of the burglary offenses.

[¶33.] Evidence related to the shooting of Williams would have been admissible in a separate burglary trial and vice versa, again not as improper character evidence, but instead as evidence used to explain the immediate factual circumstances or to prove an element of each crime. *See State v. Floody*, 481 N.W.2d 242, 253 (S.D. 1992). "This court has approved the admission of other crimes where such evidence is 'so blended or connected' with the ones on trial that proof of one incident involves the others; or explains the circumstances; or tends logically to prove any element of the crime charged." *Id.* (quoting *United States v. Tate*, 821 F.2d 1328, 1331 (8th Cir. 1987)) (alterations and internal quotations

omitted). "In such a case the evidence of the other crime is not considered extrinsic evidence and Rule 404(b) is not implicated." *Tate*, 821 F.2d at 1331. In this case, evidence of the burglary would explain the immediate circumstances of the shooting, as well as prove a motive for the attempted murder. Likewise, evidence of the shooting was necessary to prove the "inflicts . . . physical harm on another" element of first-degree burglary. *See* SDCL 22-32-1(1). As a result, we cannot conclude that the trial court's denial of Dowty's motion to sever charges was an abuse of discretion resulting in clear prejudice.

## CONCLUSION

[¶34.] The trial court did not err in denying Dowty's motion for judgment of acquittal on the charges related to the burglaries of the Ferguson and Woodward/West homes because the evidence was sufficient to support Dowty's convictions. Nor did the trial court err in denying Dowty's motion to sever charges and for relief from prejudicial joinder because the charges were properly joined under SDCL 23A-6-23 and Dowty failed to show that the denial of his motion to sever charges resulted in clear prejudice to his substantial rights. Therefore, we affirm on both issues.

[¶35.] KONENKAMP, ZINTER, SEVERSON, and WILBUR, Justices, concur.