#28293-a-SRJ
**2019 S.D. 18**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                          Plaintiff and Appellee,

   v.

JARED JEROME STONE,                          Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE ROBIN J. HOUWMAN
Judge

\* \* \* \*

MARTY J. JACKLEY
Attorney General

MATTHEW W. TEMPLAR
Assistant Attorney General                          Attorneys for plaintiff
Pierre, South Dakota                          and appellee.


MARK KADI of
Minnehaha County Office of the
   Public Advocate                          Attorneys for defendant
Sioux Falls, South Dakota                          and appellant.

\* \* \* \*

CONSIDERED ON BRIEFS ON
JANUARY 7, 2019
OPINION FILED **03/20/19**

#28293

JENSEN, Justice

[¶1.]        Jarod Stone appeals his convictions for second-degree murder, possession of a controlled substance, and possession of a firearm by a convicted drug offender.  Stone argues the circuit court committed multiple errors in pretrial rulings and at trial, including: denying his motion to sever, allowing other acts evidence and certain opinion testimony to be introduced at trial, denying his motion for a mistrial, and denying his motions for judgment of acquittal.  Stone further argues that the cumulative effect of these errors justifies a new trial.  We affirm the convictions.

**Facts and Procedural History**

[¶2.]        On April 22, 2016, Stone and Lachara Bordeaux drove to the Lucky Lady Casino in Sioux Falls.  Stone entered the casino and Bordeaux entered another nearby business.  While Stone was playing video lottery, Baptise White Eyes entered the casino.  White Eyes and Stone had an antagonistic history arising from a romantic relationship Stone had with White Eyes's former girlfriend while White Eyes was in prison.

[¶3.]        Shortly after White Eyes entered the casino, the two began arguing and were asked to leave.  After leaving the casino, White Eyes hit Stone in the face.  Stone retaliated by punching White Eyes.  Stone then began moving away from White Eyes, but White Eyes continued to follow Stone.  Stone drew a handgun and told White Eyes to stay away or he would be shot.  White Eyes continued to move toward Stone and Stone fired two shots at White Eyes.  The first shot hit White Eyes in the head knocking him to the ground.  The second shot was fired after

-1-

White Eyes fell, and missed White Eyes. White Eyes was taken to a nearby hospital where he was pronounced dead.

[¶4.] Bordeaux witnessed the shooting. She told Stone to get in her car and they left the scene. Shortly after the shooting, Stone sent a text message to his girlfriend Claressa Calderon stating, "I just killed someone I'm sorry." Law enforcement obtained the casino's surveillance footage of the shooting and distributed still shots of the shooter to the local media. Stone was identified and law enforcement received a tip that he rented a room at a Sioux Falls hotel.

[¶5.] The day after the shooting, a search warrant was executed for the hotel room registered to Stone. During the search, law enforcement found a cup containing several .380 caliber cartridges matching the manufacturer and caliber of the shell casings found at the scene of the shooting. On a table in the room, law enforcement also found a hotel receipt with Stone's name on it, stationary bearing Bordeaux's name, and three glass pipes, one of which contained white residue later identified as methamphetamine.

[¶6.] On April 26, 2016, Bordeaux was located in Le Mars, Iowa and interviewed by Detective Montgomery of the Sioux Falls Police Department. Bordeaux explained that after the shooting, she and Stone obtained a different car and drove to Minnesota. They then returned to South Dakota and again replaced their vehicle before traveling to Minnesota, Illinois, and Iowa where Stone left Bordeaux.

[¶7.] The next day, Stone was stopped by law enforcement in South Dakota, but evaded capture after providing false information of his identity. Stone's vehicle

was later found abandoned on Interstate 90 near Presho. A search of the vehicle revealed a receipt from Wisconsin, a wig, and Stone's South Dakota identification card. Later that evening, Nebraska State Patrol stopped a vehicle traveling on Interstate 80 with Stone in the back seat. After the other passengers exited the car, Stone entered the driver's seat and drove away. Law enforcement followed Stone, leading to a high-speed pursuit across western Nebraska. Stone's vehicle was eventually stopped after crossing into Wyoming and Stone was taken into custody.

[¶8.] Stone was interviewed the next day by Sioux Falls detectives including Detective Montgomery. Stone admitted to shooting White Eyes and firing two shots. When discussing the second shot, Detective Montgomery suggested the second shot could have been an involuntary reflex. Stone agreed the second shot was unintentional. Stone stated he believed White Eyes was reaching for a gun prior to the shooting. Stone also told law enforcement that he left of the scene of the shooting because he had "dope" in his pocket. Stone was asked about the location of the handgun used to kill White Eyes. Stone said he discarded the handgun a few blocks from the casino after he fled the scene. The handgun was never recovered.

[¶9.] Stone was indicted for first-degree murder, second-degree murder, three counts of first-degree manslaughter (heat of passion, dangerous weapon, and commission of a felony), unauthorized possession of a controlled drug or substance, and possession of a firearm by a convicted felony drug offender. He pleaded not guilty on all counts.

[¶10.] Stone moved to sever the charge of possession of a firearm by a convicted felony drug offender (Count VII) from the other charges in the indictment.

He argued the use of his prior conviction for possession of a controlled substance to prove the status offense in Count VII was prejudicial. The circuit court denied the motion to sever.

[¶11.] Prior to trial, Stone also moved to exclude other acts evidence consisting of his criminal record and his actions following the shooting. Stone argued this evidence was irrelevant and prejudicial. Stone also argued the evidence infringed on his Fifth Amendment right to remain silent. The circuit court denied the motion, except as to evidence of any crimes committed by Stone after he left the scene of the shooting.

[¶12.] At trial, the State asked Detective Montgomery about Stone's interstate journey and the following exchange occurred:

> [State:] And so on April 27th of 2016, was there finally a sighting of Mr. Stone?
>
> [Detective Montgomery:] Yes. Mr. Stone had gotten back into South Dakota and he was around the Presho exit here in South Dakota, and he had contact with a South Dakota State Trooper.
>
> [State:] And so based on this information, did Sioux Falls send a team out to that location?
>
> [Detective Montgomery:] We did. Mr. Stone was sent on his way at that point in time. He did not reveal his true identity. And he was sent on his way. And the car was eventually seized.

Stone objected, arguing Montgomery's answer violated the court's prior order excluding evidence of other crimes and moved for a mistrial. The circuit court denied the motion for mistrial determining the testimony did not violate the court's pretrial order.

[¶13.]     Later during Detective Montgomery's testimony, the State asked if the second shot fired by Stone was a sympathetic reflex. Stone objected arguing a lack of foundation and failure to disclose an expert opinion. The circuit court overruled the objection, and Detective Montgomery answered,

> [l]ooking at the video now and looking at the evidence, it does not seem likely . . . . One of the things with witnesses and from the investigation, was the rounds went off fairly close together when fired and so . . . *it makes it unlikely that it went that way as a sympathetic reflex shot.* (Emphasis added).

[¶14.]     At the conclusion of the State's evidence, Stone moved for a judgment of acquittal on all counts. The circuit court entered a judgment of acquittal on first-degree manslaughter, but denied the motion on all the other counts. The jury found Stone not guilty of first-degree murder, but guilty on the remaining counts. Stone was sentenced to life in prison on the conviction for second-degree murder. A five-year concurrent sentence was imposed on the drug conviction, and a two-year consecutive sentence was imposed on the firearm conviction. This appeal followed.

[¶15.]     Stone raises a number issues in this appeal that we state as follows:

1.   Whether the circuit court abused its discretion in denying the motion to sever Count VII.

2.   Whether the circuit court abused its discretion by allowing other acts evidence pertaining to Stone's actions after the shooting and by allowing certain opinion testimony concerning "sympathetic reflex."

3.   Whether the circuit court abused its discretion in denying the motion for a mistrial after other criminal acts were presented at trial.

4.   Whether the circuit court erred by denying Stone's motions for judgment of acquittal.

5.   Whether the circuit court's cumulative errors substantiate a claim for a new trial.

### Analysis and Decision

        *1.     Whether the circuit court abused its discretion in denying the motion to sever Count VII.*

[¶16.]      "A trial court's denial of a motion to sever is reviewed for an abuse of discretion." *State v. Dowty*, 2013 S.D. 72, ¶ 28, 838 N.W.2d 820, 829. "[A]n abuse of discretion arises only where the party requesting severance of joined counts can make a 'clear showing of prejudice to substantial rights.'" *State v. Shape*, 517 N.W.2d 650, 652 (S.D. 1994) (quoting *State v. Dixon*, 419 N.W.2d 699, 702 (S.D. 1988)). "The quantum of prejudice that must be shown is high, and requires more than a showing of a better chance of acquittal at a separate trial." *Dowty*, 2013 S.D. 72, ¶ 29, 838 N.W.2d at 829 (quoting *State v. Waugh*, 2011 S.D. 71, ¶ 13, 805 N.W.2d 480, 483-84). As we have previously elaborated,

> Any joinder of offenses is apt to involve some element of prejudice to the defendant, since a jury is likely to feel that a defendant charged with several crimes must be a bad individual who has done something wrong. However, if the notion of involuntary joinder is to retain any validity, a higher degree of prejudice, or certainty of prejudice, must be shown before relief will be in order.

*Id.*

[¶17.]      Stone claims the circuit court should have severed the charge of possession of a firearm by a convicted drug offender, in Count VII, from the other charges because evidence of his prior drug conviction to prove Count VII unfairly tainted the jury's consideration of the other charges.[1] He maintains that the charge for unauthorized possession of the controlled substance was particularly susceptible

---

1.    Stone does not argue the charges were improperly joined under SDCL 23A-6-23 so we only address his claim that the joinder of Count VII caused him prejudice.

#28293

to jury bias. Stone also claims prejudice from the State's refusal to accept his offer to stipulate to the prior conviction to prove Count VII.

[¶18.] Stone relies heavily on a theory that the circuit court misapplied *Old Chief v. United States*, 519 U.S. 172, 117 S. Ct. 644, 136 L. Ed. 2d 644. The defendant in *Old Chief* was charged with felony assault and possession of a firearm by a convicted felon. At trial, the prosecution refused the defendant's offer to stipulate that defendant had been convicted of a felony, as proof of the status offense, and instead introduced evidence showing the defendant had previously been convicted of felony assault. *Old Chief* did not involve a severance issue, but rather held that the prejudice considerations under Rule 403 of the Federal Rules of Evidence substantially outweighed the probative value of evidence disclosing the *nature* of the prior felony conviction. The court reaffirmed "the accepted rule that the prosecution is entitled to prove its case free from any defendant's option to stipulate the evidence away," but emphasized the rule has "virtually no application when the point at issue is a defendant's legal status, dependent on some judgment rendered wholly independently of the concrete events of later criminal behavior charged against him." *Id.* at 190, 117 S. Ct. at 654-55.

[¶19.] Stone misreads *Old Chief's* Rule 403 analysis to suggest that evidence of the *nature* of the prior conviction to prove Count VII was so prejudicial to the charge of possession of a controlled substance that it required the court to grant the motion to sever Count VII. On the contrary, it was not the degree of prejudice, but the lack of relevance in the first instance that was determinative of the issue in *Old Chief*. The defendant in *Old Chief* had offered to stipulate to "seemingly conclusive

evidence of the element" necessary to prove the status offense of possession of a firearm by a convicted felon. 519 U.S. at 186, 117 S. Ct. at 653. Because the *nature* of the prior felony conviction was wholly irrelevant to proving the status offense, the use of this evidence was unfairly prejudicial.

[¶20.] Here, Stone was charged with possession of a firearm by a convicted *drug* offender. Unlike *Old Chief*, evidence of the *nature* of the prior felony conviction was a necessary element, and thus highly probative of the State's case. Further, the circuit court minimized the prejudice by limiting the State's evidence and allowing it to present "only a brief description of the prior charge," and the date and location of the prior charge. The State followed the court's directive by asking a single question about the prior conviction.[2] In this regard, the State's evidence was no more prejudicial than the stipulation offered by Stone. The court also instructed the jury that it must consider the evidence on each of the counts separately, and a determination of Stone's guilt or innocence on one count could not influence their decision on other counts. "We presume the jury follows the trial court's limiting instructions." *State v. Ralios*, 2010 S.D. 43, ¶ 47, 783 N.W.2d 647, 660; *see also State v. Janis*, 2016 S.D. 43, ¶ 25, 880 N.W.2d 76, 83 (holding that the Court assumes the jury followed general jury instructions).

---

2.  The only question about the prior conviction at trial was during Detective Montgomery's direct testimony after identifying Stone:

    > [State:] And, Detective Montgomery, is this the same Jared Stone who has a conviction for possession of controlled substance in Minnehaha County, South Dakota, on September 17, 2013?

    > [Detecticve Montgomery:] That's correct.

[¶21.] In considering the motion to sever Count VII, the court balanced judicial efficiency against the prejudice arising from the evidence of the prior drug conviction. The record shows that several of the same witnesses would be called to testify concerning the charges joined in the indictment. The court further noted that Stone was charged with a single drug possession charge and the homicide offenses against Stone were dissimilar to the prior drug conviction. Further, Stone does not argue that the prior drug conviction caused any particular prejudice to the homicide charges. Under these circumstances, Stone has failed to show the "quantum of prejudice" necessary to demonstrate that the circuit court abused its discretion in denying his motion to sever Count VII. *Dowty*, 2013 S.D. 72, ¶ 29, 838 N.W.2d at 829 (quoting *Waugh*, 2011 S.D. 71, ¶ 13, 805 N.W.2d at 483-84).

> 2. *Whether the circuit court abused its discretion by allowing other acts evidence pertaining to Stone's actions after the shooting and by allowing certain opinion testimony concerning "sympathetic reflex."*

[¶22.] "We review evidentiary rulings for abuse of discretion . . . . Under this standard, not only must error be demonstrated, but it must also be shown to be prejudicial." *State v. Bausch*, 2017 S.D. 1, ¶ 12, 889 N.W.2d 404. "An abuse of discretion refers to a discretion exercised to an end or purpose not justified by, and clearly against reason and evidence." *State v. Bowker*, 2008 S.D. 61, ¶ 38, 754 N.W.2d 56, 68. "With regard to the rules of evidence, abuse of discretion occurs when a trial court misapplies a rule of evidence, not when it merely allows or refuses questionable evidence." *State v. Asmussen*, 2006 S.D. 37, ¶ 13, 713 N.W.2d 580, 586.

### a. Other Acts Evidence

[¶23.] Stone argues the circuit court erred by allowing the State to introduce other acts evidence of his travel to multiple other states after the shooting, and of his attempts to elude law enforcement because it was offered to show his character. He also claims this evidence violated his Fifth Amendment right against self-incrimination. Stone contends that the State's motive in introducing this evidence was to highlight his decision to exercise his right to remain silent.

[¶24.] "[R]elevant other acts evidence is admissible for any purpose other than proving the character of the defendant or his propensity to act in conformity therewith." *State v. Bertram*, 2018 S.D. 4, ¶ 22, 906 N.W.2d 418, 426. Rule 404(b) provides that other acts evidence "may be admissible for other purposes, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* (quoting SDCL 19-19-404(b)(2)). The court must satisfy a two-part balancing test before the evidence is admitted:

> [f]irst, the court must determine whether the other-act evidence is relevant to some material issue in the case other than character (factual relevancy). Second, the court must determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice (logical relevancy).

*State v. Birdshead*, 2015 S.D. 77, ¶ 57, 871 N.W.2d 62, 81. "Upon a trial court's determination that the proffered evidence is relevant, 'the balance tips emphatically in favor of admission unless the dangers set out in Rule 403 substantially outweigh probative value.'" *State v. Lassiter*, 2005 S.D. 8, ¶ 15, 692 N.W.2d 171, 176 (quoting *State v. Wright*, 1999 S.D. 50, ¶ 14, 593 N.W.2d 792, 798); *see also State v. Fisher*, 2013 S.D. 23, ¶ 15, 828 N.W.2d 795, 800 (considering prejudice under Rule 404(b) of

relevant consciousness of guilt evidence, this Court stated, "evidence does not cause danger of unfair prejudice merely because its legitimate probative force damages the defendant's case.")

[¶25.] The circuit court found Stone's actions following the shooting were relevant to show intent and consciousness of guilt. The court also determined Stone's actions were probative to his claim of self-defense. Stone does not contend that this evidence was irrelevant to his state of mind or to his claim of self-defense. Instead, Stone focuses on the prejudice arising from its admission and his claim that the evidence violated his Fifth Amendment right to remain silent.

[¶26.] "We have previously stated that 'an attempt by the accused to flee following the alleged crime is circumstantially relevant to prove not only commission of the act, *but also the intent and purpose* with which it was committed.'" *State v. Owens*, 2002 S.D. 42, ¶ 82, 643 N.W.2d 735, 756 (quoting *State v. Fast Horse*, 490 N.W.2d 496, 501 (S.D. 1992)). Further, we have recognized that evidence of flight or concealment immediately after the events charged in the indictment, may be relevant to show consciousness of guilt. *See State v. Frazier*, 2001 S.D. 19, ¶ 37, 622 N.W.2d 246, 259; *Owens*, 2002 S.D. 42, ¶ 79, 643 N.W.2d 735, 755; *State v. Aesoph*, 2002 S.D. 71, ¶ 48, 647 N.W.2d 743, 759. Stone immediately left the scene of the shooting and eluded law enforcement for days before his capture. This evidence also explained Stone's actions of discarding his gun and why the gun was never recovered.

[¶27.] Before admitting the evidence, the court considered the impact of this evidence and weighed the prejudice against its probative value. In doing so, the

court limited the State from presenting evidence of any alleged criminal offenses committed by Stone while on the run. The court also gave a limiting instruction for the jury's consideration of this evidence. Under these circumstances, the court did not abuse its discretion in determining that the probative value was not substantially outweighed by the danger of unfair prejudice.

[¶28.] In support of his claim that this evidence violated his Fifth Amendment right against self-incrimination, Stone seizes on the State's argument at the pretrial hearing. The State urged that the evidence was relevant to show Stone "did not turn himself in to speak with law enforcement, rather he fled for days going to extreme lengths to avoid law enforcement." Notwithstanding the arguments at the pretrial hearing, Stone does not point to evidence or comment by the State at trial calling attention to any assertion by Stone of his right to remain silent. Before the jury, "the test is whether the language used [by the prosecutor] was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment" on the accused's right to remain silent. *State v. Ball*, 2004 S.D. 9, ¶ 22, 675 N.W.2d 192, 200. Stone has failed to make such a showing.

[¶29.] Additionally, Stone failed to show at any point after the shooting that he unequivocally invoked his right against self-incrimination. The invocation of the right to remain silent requires more than an ambiguous act, omission or statement. Rather, "an accused who wants to invoke his or her right to remain silent [must] do so unambiguously." *Berghuis v. Thompkins*, 560 U.S. 370, 381, 130 S. Ct. 2250, 2260, 176 L. Ed. 2d 1098 (2010). As one court has stated:

> Evidence of flight is relevant, material and admissible . . . . The prosecutor is entitled to comment on this evidence and draw reasonable inferences from it. The admission of evidence of flight from police officers does not infringe on a defendant's right against self-incrimination. Flight is not an assertion of the right against self-incrimination and one's right to remain silent does not encompass the right to flee from law enforcement officers performing their official duties.

*People v. Dixon*, 270 N.W.2d 488, 491-92 (Mich. Ct. App. 1978).

### b.    Opinion Testimony

[¶30.]    Stone also claims the circuit court erred by allowing Detective Montgomery to present an opinion that the second shot fired by Stone was not a "sympathetic reflex" action. He argues "sympathetic reflex" is a technical term that escapes a layman's understanding and no foundation was established to support such an opinion by Montgomery. Stone also claims that the expert opinion was not properly disclosed prior to trial. The State counters that Detective Montgomery's testimony was properly admitted as a lay opinion.

[¶31.]    Lay witness testimony is governed by SDCL 19-19-701 which limits such testimony to opinions "(a) [r]ationally based on the witness's perception; (b) [h]elpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) [n]ot based on scientific, technical, or other specialized knowledge within the scope of [SDCL] 19-19-702." If testimony qualifies as a lay opinion, no foundation is required for the opinion. *State v. Condon*, 2007 S.D. 124, ¶ 30, 742 N.W.2d 861, 870. Conversely, if the opinion is offered as an expert opinion, under SDCL 19-19-702, the basis for the opinion must rest on a reliable foundation consistent with the standards from *Daubert*. *State v. Guthrie*, 2001 S.D. 61, ¶ 34, 627 N.W.2d 401, 416.

[¶32.]     Detective Montgomery's testimony was based upon his investigation and personal knowledge of the case.  But the question of whether the second shot was a sympathetic reflex delves into whether Stone's action was voluntary or involuntary, seemingly requiring a judgment based upon some technical or specialized knowledge.  It is unclear whether there was an adequate foundation for the opinion, or if Montgomery was qualified to offer such an opinion.  Even if we assume, however, that the circuit court abused its discretion by admitting the opinion, Stone must show prejudice from the error.  *State v. Smiley*, 2004 S.D. 119, ¶ 5, 689 N.W.2d 427, 429 ("[U]nder the abuse of discretion standard of review not only must error be identified, but it must also be shown to be prejudicial.").

[¶33.]     To establish prejudice, Stone must show that but for the circuit court's error the jury would have delivered a different verdict.  *Stabler v. First State Bank of Roscoe*, 2015 S.D. 44, ¶ 36, 865 N.W.2d at 485.  Stone argues the evidence suggesting the second shot was intentional supported the State's claim that he acted with indifference to human life and a depraved mind.  However, the question of whether Stone intentionally fired the errant second shot had little consequence on the State's case for second-degree murder.  There was no dispute that Stone's first shot killed White Eyes and that the shot was intentional.  Both eyewitness and video evidence established that Stone pointed the weapon directly at White Eyes and verbally stated his intention to shoot White Eyes before firing the fatal shot at close range.  *See Kleinsasser v. Weber*, 2016 S.D. 16, ¶ 24, 877 N.W.2d 86, 95 (explaining that the State must prove the defendant intended to do the physical act); *State v. Laible*, 1999 S.D. 58, ¶ 14, 594 N.W.2d 328, 333 (holding shooting the

#28293

victim in the face at close range showed an indifference to human life and a depraved heart). Stone has not established that the jury would have delivered a different verdict if the "sympathetic reflex" opinion had been excluded.

> 3. *Whether the circuit court erred in denying the motion for a mistrial after other criminal acts were presented at trial.*

[¶34.] "[T]his Court reviews the trial court's 'denial of a motion for mistrial under the abuse of discretion standard.'" *State v. Kvasnicka*, 2013 S.D. 25, ¶ 17, 829 N.W.2d 123, 127 (quoting *State v. Dillon*, 2010 S.D. 72, ¶ 28, 788 N.W.2d 360, 369). "We will affirm a trial court's denial of a mistrial unless we find abuse of discretion resulting in clear prejudice." *Id.* "Abuse of discretion is defined as 'a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which on full consideration, is arbitrary or unreasonable.'" *Id.* (quoting *State v. Lemler*, 2009 S.D. 86, ¶ 40, 774 N.W.2d 272, 286).

> In order to justify a mistrial, the defendant must make an actual showing of prejudice. For purposes of determining whether there are grounds for a mistrial there must be error "which, in all probability, produced some effect upon the jury's verdict and is harmful to the substantial rights of the party assigning it."

*State v. Mollman*, 2003 S.D. 150, ¶ 23, 674 N.W.2d 22, 29 (quoting *State v. Anderson*, 2000 S.D. 45, ¶ 36, 608 N.W.2d 644, 655).

[¶35.] In denying the motion for mistrial, the circuit court concluded that the evidence of Stone's brief intermediate contact with law enforcement near Presho did not violate the court's pretrial order explaining,

> Detective Montgomery has said that Mr. Stone didn't reveal his true identity. I don't believe he indicated that he committed a crime of false impersonation. And I believe that the statement made by Detective Montgomery is in compliance with the [c]ourt's ruling that he can testify and witnesses can testify about relevant evidence of flight and attempts at concealment.

-15-

[¶36.] The order prohibited evidence "regarding other criminal offenses or alleged criminal acts along this route of travel . . . ." To commit the crime of false impersonation under SDCL 22-40-1, a person must falsely impersonate another by offering a fictitious name, or provide other false information to law enforcement about his or her identity. Although Detective Montgomery testified that Stone failed to reveal his true identity, he offered no testimony that Stone gave a false name or lied about his identity to law enforcement. Moreover, the State did not present any evidence that Stone was charged with any crimes or was alleged to have committed any crime for *failing to reveal his true identity*.

[¶37.] Having properly determined that Detective Montgomery's testimony did not violate its pretrial order, the court did not abuse its discretion in denying the motion for a mistrial. Further, Stone has failed to show actual prejudice, or that this testimony had a clear impact on the jury's verdict. *Kvasnicka*, 2013 S.D. 25, ¶ 17, 829 N.W.2d at 127.

> 4. *Whether the circuit court erred by denying Stone's motions for judgment of acquittal.*

[¶38.] Denial of a motion for acquittal is reviewed de novo. *State v. Quist*, 2018 S.D. 30, ¶ 13, 910 N.W.2d 900, 904. When conducting our review, we "determine whether the evidence was sufficient to sustain the conviction." *Id.* (quoting *State v. Guthmiller*, 2014 S.D. 7, ¶ 21, 843 N.W.2d 364, 371). "To do so, we ask 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Dowty*, 2013 S.D. 72, ¶ 15, 838 N.W.2d 820, 825). "If the evidence, including circumstantial evidence and

reasonable inferences drawn therefrom sustains a reasonable theory of guilt, a guilty verdict will not be set aside." *State v. Martin*, 2017 S.D. 65, ¶ 6, 903 N.W.2d 749, 751. We address each of Stone's challenges to his convictions:

### a. Possession of a controlled drug or substance

[¶39.] The crime of unauthorized possession of controlled drug or substance is set forth in SDCL 22-42-5 and provides that "[n]o person may knowingly possess a controlled drug or substance unless the substance was obtained directly or pursuant to a valid prescription or order from a practitioner, while acting in the course of the practitioner's professional practice or except as otherwise authorized . . . ." At trial, Stone generally moved for judgment of acquittal on all the charges, including the charge of unauthorized possession of controlled drug or substance. On appeal, Stone argues the State's evidence was insufficient to show that he possessed a controlled substance because he claims he no longer had control of the hotel room where the glass pipe with methamphetamine residue was found and was not physically occupying the room at the time of the search.

[¶40.] To establish possession,

> "[a] defendant's dominion or right of control over a controlled substance does not have to be exclusive and can either be actual—i.e., when the controlled substance is found on the defendant's person—or constructive—i.e., when the defendant 'has dominion or control over . . . the premises upon which the [controlled substance was] found[.]'"

*State v. Fischer*, 2016 S.D. 1, ¶ 27, 873 N.W.2d 681, 693. "When a person has dominion or control over either the narcotics or the *premises* upon which narcotics were found, constructive possession is shown." *State v. Barry*, 2004 S.D. 67, ¶ 9, 681 N.W.2d 89, 92-93.

[¶41.]     Stone was a registered guest in the hotel room where the pipe containing the methamphetamine residue was found. The pipe was located in a prominent location on a table in the room. A hotel receipt confirming Stone had rented the room was located next to the pipe. A container of cartridges matching the manufacturer and caliber of the casings found at the scene of the shooting was also found in the room. Although Bordeaux's personal stationary was found in the room, there was no evidence she was ever in the room without Stone. On the day of the shooting, Bordeaux testified that she and Stone drove to the casino and left together after the shooting. Within hours after Stone and Bordeaux fled out-of-state together, law enforcement executed the search warrant for the hotel room. This evidence, along with Stone's admission to possessing an illegal substance in his pocket at the time of the shooting, was sufficient to allow a jury to reasonably infer that Stone had dominion and control over the hotel room and knew the illegal substances were in his room. "No guilty verdict will be set aside if the evidence, including circumstantial evidence and reasonable inferences drawn therefrom, sustains a reasonable theory of guilt." *State v. Laplante*, 2002 S.D. 95, ¶ 19, 650 N.W.2d 305, 310.

[¶42.]     Stone's argument incorrectly suggests a jury could find the element of possession only with evidence that he was found with or near the methamphetamine. As argued by Stone, "the absence of evidence that the Appellant was present when the police entered the hotel room demonstrated a lack of control. Allegations of flight made by the State suggest dominion had been abandoned." The amended indictment charged Stone with unlawful possession of a

controlled substance "on or about" April 22, 2016. Stone does not allege time is an essential element of possession of a controlled substance, and the jury could have determined he possessed the methamphetamine shortly before police officers actually discovered it. *See* SDCL 23A-6-9 ("The precise time at which an offense was committed need not be stated in an indictment or information, but it may be alleged to have been committed at any time before the filing thereof, except when the time is a material element of the offense."); *State v. Wilkinson,* 2007 S.D. 79, ¶ 36, 739 N.W.2d 254, 263 ("[T]he use of the term 'on or about' in an indictment 'relieves the government of proving that the crime charged occurred on a specific date, so long as it occurred within a reasonable time of the date specified'").

### b. Possessing of a firearm

[¶43.] Possession of a firearm by convicted drug offender is established under SDCL 22-14-15.1, which states, "[n]o person who has been convicted of a *felony* under chapter 22-42 or of a felony for a crime with the same elements in another state may possess or have control of a firearm." (Emphasis added.) Detective Montgomery testified that Stone was previously convicted of possession of a controlled substance in Minnehaha County, but Stone claims the State presented no evidence that this prior conviction was a felony. While Stone's conviction was never identified as a felony by Detective Montgomery, a Facebook post from Stone's account was introduced at trial admitting to having a felony on his record, but questioning whether that should require him to give up his guns. This message, along with Detective Montgomery's testimony, was sufficient for a jury to infer that Stone's prior drug conviction was a felony.

### c.     Second-Degree Murder

[¶44.]     Second-degree murder is defined as, "any act imminently dangerous to others and evincing a depraved mind, without regard for human life, although without any premeditated design to effect the death of any particular person, including an unborn child." SDCL 22-16-7. Stone argues that since he attempted to retreat from White Eyes and warned him to stay away before firing his gun, the State failed to establish that the killing was committed with a depraved mind or without a regard for human life.

[¶45.]     The State provided evidence showing that Stone intentionally shot White Eyes in the head at close range. This evidence was sufficient for a prima facie case of second-degree murder. *See Kleinsasser,* 2016 S.D. 16, ¶ 24, 877 N.W.2d 86, 95; *Laible*, 1999 S.D. 58, ¶ 14, 594 N.W.2d at 333. The court also fully instructed the jury on Stone's self-defense claims. While there was evidence that Stone was retreating from White Eyes, the question of whether Stone was justified in using deadly force against an unarmed man, under all the circumstances, was a question for the jury. *See Quist*, 2018 S.D. 30, ¶ 15, 910 N.W.2d 900, 904-05 (explaining it was the jury's role to resolve factual conflicts and weigh the credibility of the defendant's and the State's cases).

> 5.     *Whether the circuit court's cumulative errors substantiate a claim for a new trial.*

[¶46.]     Based on our rulings above, we decline to examine this issue. *See State v. Hemminger*, 2017 S.D. 77, ¶ 41, 904 N.W.2d 746, 759 (declining to review a claim of cumulative error based on the Court finding a lack of error on the case's other issues).

[¶47.]      We affirm all of Stone's convictions.

[¶48.]      GILBERTSON, Chief Justice, and KERN and SALTER, Justices, and

SEVERSON, Retired Justice, concur.