#28270-a-SLZ
**2018 S.D. 30**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

     v.

BRADLEY DAVIS QUIST,                    Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIFTH JUDICIAL CIRCUIT
BROWN COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE RICHARD A. SOMMERS
Judge

* * * *

MARTY J. JACKLEY
Attorney General

PATRICIA ARCHER
Assistant Attorney General
Pierre, South Dakota                    Attorneys for plaintiff
                and appellee.


THOMAS J. COGLEY of
Ronayne & Cogley, P.C.
Aberdeen, South Dakota

CHRISTOPHER D. DOHRER
Aberdeen, South Dakota                    Attorneys for defendant
                and appellant.


* * * *

CONSIDERED ON BRIEFS
FEBRUARY 12, 2018
OPINION FILED **03/28/18**

#28270

ZINTER, Justice

[¶1.] Bradley Quist appeals from a final judgment of conviction for second-degree murder. He argues the circuit court erred in: (1) failing to dismiss the indictment; (2) denying his motion for judgment of acquittal; and (3) admitting autopsy photographs into evidence. We affirm.

## Facts and Procedural History

[¶2.] On the night of May 30, 2015, Quist was drinking with his self-described best friend, Ron Witchey, at a bar in Aberdeen. Quist was 55 and Witchey was 61 years of age. Both men consumed several drinks, and although Quist paid for many of them, Witchey ran out of money and asked Quist for a loan. Quist was frustrated with Witchey's failure to repay a prior loan, and Witchey's additional request angered Quist and resulted in an argument.

[¶3.] At some point during the evening, Quist indicated he was going to assault Witchey. This led Witchey to ask two other men for help in the event that Quist tried to start a fight. Those men, however, left the bar around 12:41 a.m. on May 31, leaving Quist and Witchey behind.

[¶4.] The actual incident occurred approximately 30 minutes later and was recorded by surveillance video. The video showed that at 1:12 a.m., Quist left the bar to smoke a cigarette. Approximately two minutes later, Witchey came out, passed in front of Quist, and started walking down the sidewalk away from Quist and the bar. While Witchey's back was turned, Quist jogged up behind him and struck him with enough force to dislodge Witchey's hat. Witchey turned and Quist struck him again, knocking him to the ground. While Witchey was lying on his side,

-1-

Quist kicked Witchey in the head. Quist then leaned towards Witchey's face, and as Witchey raised his arm in either a plea to stop or to protect himself, Quist kicked Witchey in the face again. After shaking his finger at Witchey, Quist then punched Witchey in the face, a blow that rendered his body limp and motionless. Before walking away, Quist lingered around Witchey's body and kicked him in the buttocks three more times.

[¶5.] Law enforcement arrived, and bar employees identified Quist as the assailant. When questioned by police, Quist admitted he had been frustrated with Witchey's failure to repay loans. In Quist's words, he was "tired of [Witchey] taking advantage of [him]." However, Quist downplayed the number of times he struck Witchey and the force he used. He also claimed he had acted in self-defense but admitted "[he] did quite a bit more damage than [he] intended to do." Quist finally claimed that Witchey had "played possum" in the incident, and Quist denied striking Witchey when he was on the ground. Inconsistently, however, Quist admitted "[he] mighta given a 50 percent kick, once." Later, Quist also told an acquaintance that he used much more force than he had disclosed to police. He told the acquaintance he had "kicked [Witchey] in the head like he was lining up a field goal, and as hard as he could kick him."

[¶6.] Witchey died on May 31, 2015, and an autopsy was performed that same day in Grand Forks, North Dakota. Dr. Mark Koponen, a forensic pathologist, observed bruising, abrasions, and lacerations on Witchey's face. Dr. Koponen determined that the cause of death was a massive subarachnoid hemorrhage caused by a laceration of the vertebral artery. Dr. Koponen testified that this type of injury

was classically caused by a blow to the chin or face where the head snaps back abruptly. Quist's forensic pathologist agreed with Dr. Koponen's opinions as to the cause of death. Witchey's body was returned to the Brown County Coroner in Aberdeen on the day of the autopsy. The coroner then released the body to Witchey's family, and they had it cremated shortly thereafter.[1]

[¶7.] Quist was arrested and charged with first-degree manslaughter the day after Witchey's death. In a superseding indictment, a grand jury charged Quist with second-degree murder. The jury found Quist guilty, and he now appeals raising three issues:

1. Whether the circuit court erred in denying his motion to dismiss the indictment on the ground that he was not given notice of the coroner's release of the body, which deprived him of the opportunity to have an independent autopsy.

2. Whether the circuit court erred in denying his motion for judgment of acquittal on the ground that the evidence was insufficient to support the verdict.

3. Whether the circuit court erred in admitting autopsy photographs.

**Decision**

*Motion to Dismiss the Indictment*

[¶8.] Quist argues the circuit court should have granted his motion to dismiss the indictment. His motion was based on the fact that the State did not give him notice that Witchey's body would be returned to the family and cremated.

---

1. According to Quist, Witchey's body was cremated approximately 24 hours after Quist's arrest.

Quist claims entitlement to notice under SDCL 23A-37-15,[2] which requires notice to a defendant before law enforcement returns "property" in its possession to its "owner." Quist also claims that the failure to provide such notice violates due process. He claims prejudice because the cremation foreclosed his opportunity to have his own pathologist examine the body for exculpatory evidence.[3]

[¶9.]        The grounds for dismissal of an indictment are listed in SDCL 23A-8-2. Those nine grounds "are exclusive." *State v. Vatne*, 2003 S.D. 31, ¶ 14, 659 N.W.2d 380, 384. The rationale for this limitation is that "an indictment returned by a legally constituted and unbiased grand jury, is like an information drawn by the prosecutor, and if valid on its face, is enough to call for trial of the charge on the merits." *State v. Carothers*, 2006 S.D. 100, ¶ 9, 724 N.W.2d 610, 616. Although Quist claims the State's alleged failure to comply with the notice requirement in SDCL 23A-37-15 warrants a dismissal, the statute does not permit dismissals on that ground.

---

2.       SDCL 23A-37-15 provides:

> Before any property is returned to the owner pursuant to § 23A-37-14, the law enforcement personnel in possession of the property shall notify the defendant that the property will be returned to the owner. Upon a motion made by the defendant and upon good cause shown that the property contains exculpatory evidence of the defendant's innocence, the court may order the law enforcement personnel in possession of the property not to release it to the owner.

3.       The coroner released Witchey's body to his family in accordance with state law, and Quist does not contend the State acted in the bad faith. *See generally* SDCL 34-26-14 (stating that when a coroner's investigation is complete, the person charged by law with burying the body of the deceased is entitled to custody of such body for burial).

[¶10.]     We also disagree with Quist's argument that the failure to provide him the notice required by SDCL 23A-37-15 deprived him of due process. SDCL 23A-37-15 applies only when law enforcement returns "property" to its "owner." But a decedent's body is not property that can be owned. "[T]here is no property right as such in a dead body, the right to bury a dead body has been recognized by the courts as a quasi-property right." *Mexican v. Circle Bear*, 370 N.W.2d 737, 739 (S.D. 1985), *superseded by statute on other grounds*. The Eighth Circuit Court of Appeals more fully explained:

> In the sense in which the word "property" ordinarily is used, one whose duty it becomes to bury a deceased person has no right of ownership over the corpse; but, in the broader meaning of the term, he has what has been called a "quasi property right" which entitles him to the possession and control of the body for the single purpose of decent burial.

*Lawyer v. Kernodle*, 721 F.2d 632, 634 (8th Cir. 1983).

[¶11.]     We also agree with the Nebraska Supreme Court's observation that legislatures have good reasons for not intending this type of access-to-evidence statute to apply to human remains. Unlike other tangible physical evidence, "a person's body is uniquely connected to the emotional feelings of the deceased's relatives, who wish to dispose of their loved one's remains as they see fit, rather than preserve them for duplicative tests or analysis." *State v. Henry*, 875 N.W.2d 374, 394 (Neb. 2016). Additionally, unlike other physical evidence, a body naturally deteriorates and is difficult to preserve. *Id.*; *see also People v. McNeill*, 169 Cal. Rptr. 313, 318 (Cal. Ct. App. 1980) (stating that a person's body is unlike other physical evidence that must be preserved by the State). We conclude that Quist had no due process right to notice under SDCL 23A-37-15.

[¶12.] Quist has also failed to demonstrate prejudice—i.e., that he was deprived of exculpatory evidence. The cause of Witchey's death was not disputed, and Quist's own expert concurred with Dr. Koponen's autopsy findings. Therefore, Quist merely speculates that an independent autopsy may have revealed potential exculpatory evidence. But without a showing of the deprivation of exculpatory evidence, cremation of a decedent's remains is no basis for this type of speculative due-process-discovery claim. *See Paradis v. State*, 716 P.2d 1306, 1313-15 (Idaho 1986) (finding no due process violation for the inability to perform an independent autopsy after the body was released to the victim's family and subsequently cremated); *State v. Shaffer*, 725 P.2d 1301, 1305-06 (Utah 1986) (holding that a "mere possibility" of finding exculpatory evidence following the cremation of a body was insufficient to establish a due process violation); *Lopez v. State*, 86 P.3d 851, 862 (Wyo. 2004) (finding no due process violation for the State's failure to notify the defendant of its intention to release the victim's body to relatives, which denied the defendant of an opportunity to conduct an independent examination). We conclude that the State's return of Witchey's body to his family did not deprive Quist of due process.

*Motion for Judgment of Acquittal*

[¶13.] Quist argues the circuit court erred in denying his motion for a judgment of acquittal. The motion was based on the claim that the evidence was insufficient to constitute second-degree murder. "We review the denial of a motion for acquittal de novo." *State v. Traversie*, 2016 S.D. 19, ¶ 9, 877 N.W.2d 327, 330. "Our task is to determine 'whether the evidence was sufficient to sustain the

conviction.'" *State v. Guthmiller*, 2014 S.D. 7, ¶ 21, 843 N.W.2d 364, 371 (quoting *State v. Dowty*, 2013 S.D. 72, ¶ 15, 838 N.W.2d 820, 825). "To do so, we ask 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* "If the evidence, including circumstantial evidence and reasonable inferences drawn therefrom sustains a reasonable theory of guilt, a guilty verdict will not be set aside." *State v. Martin*, 2017 S.D. 65, ¶ 6, 903 N.W.2d 749, 751.

[¶14.] Quist argues that the jury ignored his self-defense theory. He contends a rational jury would not have found him guilty for what he describes as a mere "bar fight." We disagree with Quist's characterization of the assault.

[¶15.] The surveillance video recorded Quist's unprovoked and brutal killing of Witchey. The video showed that without provocation, Quist attacked Witchey from behind; intentionally kicked Witchey twice in the face as if lining up to kick a field goal; struck Witchey in the face with his fist; and continued to kick Witchey as his motionless body remained defenseless on the ground. A rational jury could have concluded that these acts were not defensive. A rational jury could have also concluded these acts proved the two material elements of second-degree murder that were at issue: a "depraved mind" and a "[dis]regard for human life." *See* SDCL 22-16-7.[4] Quist relies only on his theory of the case and his version of the facts,

---

4. Under SDCL 22-16-7, "[h]omicide is murder in the second degree if perpetrated by any act imminently dangerous to others and evincing a depraved mind, without regard for human life, although without any

(continued . . .)

which is substantially different than the State's evidence supporting the verdict.

Further, "it was for the jury to resolve the factual conflicts, weigh credibility, and sort out the truth." *Martin,* 2017 S.D. 65, ¶ 9, 903 N.W.2d at 753. The totality of the evidence in this case, when viewed in a light most favorable to the State, was clearly sufficient to support Quist's conviction for second-degree murder.

*Autopsy Photographs*

[¶16.]        Quist finally argues the circuit court erred in admitting eight autopsy photographs. Quist contends the photographs were cumulative and prejudicial. The rules for admissibility are well-settled:

> [P]hotographs are generally admissible where they accurately portray anything that a witness may describe in words. They are also admissible when they are helpful in clarifying a verbal description of objects and conditions. They must, however, be relevant to some material issue. If relevant, photographs are not rendered inadmissible merely because they incidentally tend to arouse passion or prejudice. Autopsy photographs fall within these rules. Although disturbing and cumulative, autopsy photographs may be admitted when they are necessary to aid in an expert's presentation of evidence.

*State v. Hemminger,* 2017 S.D. 77, ¶ 33, 904 N.W.2d 746, 757 (citations omitted). A circuit court's admission of photographs into evidence is reviewed under an abuse of discretion standard. *State v. Owens,* 2002 S.D. 42, ¶87, 643 N.W.2d 735, 756.

[¶17.]        In this case, the State introduced six photographs showing the extent of Witchey's head injuries. The State's expert, Dr. Koponen, then referenced each of those photographs in his testimony describing those injuries. The State also

_____

(. . . continued)
        premeditated design to effect the death of any particular person, including an unborn child."

introduced two photographs of Witchey's brain. Dr. Koponen used those photographs to describe Witchey's subarachnoid hemorrhage. This use of autopsy photographs was permitted under *Owens* and *Hemminger*. *See Hemminger*, 2017 S.D. 77, ¶ 34, 904 N.W.2d at 757 (permitting the introduction of autopsy photographs when used to assist the State's expert in his testimony on the victim's cause of death); *Owens*, 2002 S.D. 42, ¶ 91, 643 N.W.2d at 757 (affirming the use of autopsy photographs by the State's expert in explaining his examination and findings).

[¶18.] We acknowledge Quist's point that he did not dispute the cause of death. But the State was required to also prove that his blows were "imminently dangerous" to Witchey, "evincing a depraved mind, without regard for human life." *See* SDCL 22-16-7. "In doing so, the State had 'the right to present its case in any manner it saw fit so long as it stayed within evidentiary rules.'" *Hemminger*, 2017 S.D. 77, ¶ 35, 904 N.W.2d at 757 (quoting *State v. Herrmann*, 2004 S.D. 53, ¶ 12, 679 N.W.2d 503, 507). Not only were the autopsy photos relevant to prove these elements of the offense, they were relevant to rebut Quist's claim of self-defense. They were also not unduly prejudicial. "[B]ecause virtually all relevant evidence presented at trial is harmful to the other party," *Supreme Pork, Inc. v. Master Blaster, Inc.*, 2009 S.D. 20, ¶ 30, 764 N.W.2d 474, 484, autopsy photographs are not automatically excluded as unduly prejudicial. To be unduly prejudicial, the evidence "must persuade the jury in an *unfair* and *illegitimate* way." *Id.* Quist fails to make that showing here. The circuit court did not abuse its discretion in admitting the photographs.

#28270

[¶19.] Affirmed.

[¶20.] GILBERTSON, Chief Justice, and SEVERSON, KERN, and JENSEN, Justices, concur.