#28703-a-DG
**2019 S.D. 43**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                         Plaintiff and Appellee,

    v.

GARY J. PODZIMEK,                         Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIFTH JUDICIAL CIRCUIT
DAY COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE JON S. FLEMMER
Judge

\* \* \* \*

JASON R. RAVNSBORG
Attorney General

PHILIP D. CARLSON
Assistant Attorney General
Pierre, South Dakota                         Attorneys for plaintiff
                     and appellee.

CHRIS A. NIPE of
Larson & Nipe
Mitchell, South Dakota                         Attorneys for defendant
                     and appellant.

\* \* \* \*

CONSIDERED ON BRIEFS
ON MAY 28, 2019
OPINION FILED **07/17/19**

GILBERTSON, Chief Justice

[¶1.]        Gary Podzimek appeals his convictions and sentences for grand theft

by deception, attempted grand theft by deception, deceptive act or practice, three

counts of failure to pay sales tax, and four counts of making a false or fraudulent

tax return.  The convictions stem from Podzimek's excessive billing of Don Martin,

now deceased, for mechanic work done to Martin's pickup.  On appeal, Podzimek

contends that the circuit court erred by: (1) admitting certain statements made by

Martin to a state investigator; (2) admitting Podzimek's bank records; and

(3) denying Podzimek's post-trial motion to set aside his guilty verdicts.

**Facts and Procedural History**

[¶2.]        Podzimek was an auto mechanic who operated in Bristol, South

Dakota.  Martin, a retired farmer, was one of Podzimek's customers.  Martin owned

a 1976 Chevy half-ton, four-wheel-drive pickup, which he occasionally brought to

Podzimek for repairs.  Martin first brought his pickup to Podzimek at Horter's

Repair and Restoration in Bristol.  When Podzimek was terminated from Horter's in

2014, Martin continued to service his pickup at Horter's.

[¶3.]        On April 17, 2015, Martin took his pickup to Horter's for an oil change

and vehicle inspection.  Eric Garrett, a mechanic at Horter's since 2014, performed

the oil change and inspection.  During the inspection, Garrett noticed nothing

wrong with the vehicle.  He did not detect any leaks or other mechanical issues and

observed that the pickup was in particularly good condition for its age.

[¶4.]        About a week and a half later, Martin drove his pickup to Podzimek's

new repair shop in Bristol, which Podzimek owned and operated with his wife

Brenda, to speak with Podzimek. After Martin left Podzimek's shop, Podzimek called Martin to report that he noticed Martin's pickup was making strange noises and leaking coolant. Podzimek offered to inspect the vehicle. Upon inspection, Podzimek told Martin that the vehicle needed its engine rebuilt or a new engine entirely. Martin left his pickup with Podzimek, who began repairs. Podzimek worked on the vehicle from August of 2015 until April of 2016—and claimed to have fixed a variety of issues. During that period, Martin wrote Podzimek eight different checks for the repairs, totaling $52,595.85. Martin's pickup was valued at only around $6,000.

[¶5.]    Martin sought to borrow money from Dacotah Bank in Webster, South Dakota to cover the last two checks written to Podzimek, totaling $12,795.85. Bank President Dan Menking testified that he was "bothered" by the fact that Martin would have to borrow that amount of money considering Martin's finances. This lead Menking to review Martin's bank account. Menking discovered that Martin had already paid Podzimek $39,800 for repairs. Suspecting that Podzimek's charges were fraudulent, Menking met with Martin and the local Sheriff. After the meeting, Martin stopped payment on the last two checks issued to Podzimek. Later on, Podzimek called Menking and asked him to lend Martin the money to pay for the remaining repair charges by using some land owned by Martin as collateral.

[¶6.]    Thereafter, Martin filed a complaint against Podzimek with the South Dakota Attorney General's Office, Division of Consumer Protection. Ray Klinger, an investigator and certified law enforcement officer with the Division of Consumer Protection, was assigned to Martin's complaint. As part of his investigation,

Klinger spoke with Martin in person and obtained a statement from Podzimek. Klinger received documents from Podzimek attempting to explain the charges to Martin, and invoices for parts and labor in connection to the work done on Martin's vehicle. Finally, Klinger subpoenaed Podzimek's bank records from four different banks pursuant to SDCL 37-24-14. On October 30, 2016, while the investigation of Podzimek was ongoing, Martin passed away at the age of 83.

[¶7.] As a result of Klinger's investigation, Podzimek was indicted by a Day County grand jury on December 9, 2016, for one count each of: grand theft by deception in violation of SDCL 22-30A-1, SDCL 22-30A-3(1), and SDCL 22-30A-17; attempted grand theft by deception in violation of SDCL 22-30A-1, SDCL 22-30A-3(1), SDCL 22-30A-17, and SDCL 22-4-1; and deceptive act or practice in violation of SDCL 37-24-6(1). Klinger and Special Agent Greg Cleland also reviewed South Dakota Department of Revenue records regarding Podzimek's business. As a result of that review, Podzimek was indicted a second time on September 27, 2017, for: two counts of failure to pay sales tax in violation of SDCL 10-45-48.1(2); one count of failure to pay sales tax two or more times in a twelve month period in violation of SDCL 10-45-48.1(8); and four counts of making a false or fraudulent sales tax return in violation of SDCL 10-45-48.1(1). Because the charges in both indictments stemmed from the same events, the two indictments were joined for trial by order of the circuit court on December 27, 2017.

[¶8.] Prior to Podzimek's trial, the State filed notice of intent to introduce evidence of four statements made by Martin to Klinger. Podzimek moved to suppress evidence of the statements on the basis that the statements constituted

inadmissible hearsay, and that admission of the statements would violate his rights under the confrontation clause of the Sixth Amendment. Podzimek also moved to suppress evidence of his bank statements, claiming the subpoenas used to obtain the documents were improper. The circuit court denied Podzimek's motions to suppress in a memorandum opinion on February 22, 2018.

[¶9.]     A jury trial was held on April 23–25, 2018, and Podzimek was convicted on all ten counts contained in both indictments. On May 2, 2018, Podzimek filed a motion to set aside his guilty verdicts on the grounds that the State failed to sufficiently prove Podzimek's identity at trial. The circuit court denied Podzimek's motion. On July 24, 2018, Podzimek was sentenced to ten years in the state penitentiary for the count of grand theft by deception. The circuit court suspended seven years of Podzimek's sentence on certain conditions, including that Podzimek give up his sales tax license and pay restitution of $39,800 to the Martin Family Trust. The court gave Podzimek lesser, concurrent sentences for each of the remaining counts.

[¶10.]     Podzimek appeals his conviction and sentence, raising the following issues for our review:

> 1.    Whether the circuit court erred by admitting the statements made by Martin to Klinger.
>
> 2.    Whether the circuit court erred by admitting Podzimek's bank records, subpoenaed by the State, into evidence.
>
> 3.    Whether the circuit court erred by denying Podzimek's post-trial motion to set aside his guilty verdicts.

## Analysis & Decision

[¶11.]    1.    *Whether the circuit court erred by admitting the statements made by Martin to Klinger.*

[¶12.]    Prior to Podzimek's trial, the state offered notice of intent to introduce several statements that Martin made to Klinger during the course of the investigation because Martin had died. Specifically, the State sought to introduce four statements made by Martin regarding: (1) why Martin made his initial complaint to the Consumer Protection Division; (2) why Martin took his vehicle to Podzimek's auto repair business; (3) the amount of money Martin paid Podzimek, that the payment was made by check, and that the two checks were cancelled by Martin after consulting with his banker regarding fraud; and (4) Podzimek's statement to Martin that a lien had been put on Martin's vehicle. Podzimek argues that the admission of these statements violated his rights under the Confrontation Clause of the Sixth Amendment. He claims that the statements should have been suppressed because they were testimonial statements made to a law enforcement officer, and because he did not have the opportunity to confront or cross-examine Martin about the statements because Martin had died by the time of trial.

[¶13.]    The question of whether a defendant's Sixth Amendment right to confrontation was violated is a constitutional question which we review de novo. *State v. Spaniol*, 2017 S.D. 20, ¶ 23, 895 N.W.2d 329, 338. "The Confrontation Clause of the Sixth Amendment to the United States Constitution, as applied to South Dakota through the Fourteenth Amendment, requires that in all criminal cases, the defendant has the right 'to be confronted with the witnesses against him.'" *Id.* ¶ 24; *see also Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354,

158 L. Ed. 2d 177 (2004); *State v. Davis*, 401 N.W.2d 721, 724 (S.D. 1987). "The Confrontation Clause applies to witnesses testifying at trial and to the admission of hearsay." *Spaniol,* 2017 S.D. 20, ¶ 24, 895 N.W.2d at 338. "This right is generally satisfied when the defense is given a full and fair opportunity to probe and expose a witness'[s] infirmities through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness'[s] testimony." *Id.* (quoting *State v. Carothers*, 2006 S.D. 100, ¶ 16, 724 N.W.2d 610, 617).

[¶14.] This Court has stated, however, that "the Sixth Amendment does not bar out-of-court statements when the statement is not offered to prove the truth of the matter asserted; thus, the Sixth Amendment poses no bar to the admission of non-hearsay statements." *State v. Kihega,* 2017 S.D. 58, ¶ 36, 902 N.W.2d 517, 528 (quoting *United States v. James*, 487 F.3d 518, 525 (7th Cir. 2007)). "We have also noted that when this kind of out-of-court statement is not offered to prove the truth of the matter asserted, 'the Confrontation Clause is satisfied if the defendant had the opportunity to cross-examine the person repeating the out-of-court statement.'" *Id.* (quoting *State v. Johnson*, 2009 S.D. 67, ¶ 23, 771 N.W.2d 360, 369).

[¶15.] We need not address Podzimek's assertion that the statements admitted by the circuit court were testimonial hearsay which violated Podzimek's Confrontation Clause rights. This is because, even if admission of the statements was improper, their admission was harmless error. "[A]n otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt."

*Delaware v. Van Arsdall*, 475 U.S. 673, 681, 106 S. Ct. 1431, 1436, 89 L. Ed. 2d 674 (1986).

> Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness'[s] testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

*Id.* at 684, 106 S. Ct. at 1438. In this vein, this Court has specifically held that even if a circuit court errs in admitting hearsay statements, "the error [is] harmless [if] the [admitted] evidence was cumulative of other evidence presented independently at trial." *Kihega*, 2017 S.D. 58, ¶ 33, 902 N.W.2d at 527 (quoting *State v. Davi*, 504 N.W.2d 844, 855 (S.D. 1993)).

[¶16.]     Here, a full review of the record reveals a host of factors that show that any alleged error committed by the circuit court in admitting Martin's statements was harmless beyond a reasonable doubt. Each of the statements made by Martin to Klinger were unimportant to the prosecution's case, namely because they contained information that was merely cumulative or corroborative of other evidence that was independently and properly admitted. Klinger's testimony as to Martin's reason for making his initial complaint to the Consumer Protection Division (because he felt he had been excessively billed by Podzimek) was brought out in the testimony of Dacotah Bank President Menking. Menking testified that, in a meeting with Martin and the County Sheriff, Menking added up the total amount of the eight checks issued to Podzimek. When Martin saw the total amount of money that he spent to have the pickup fixed, Menking indicated that Martin

believed that he had been swindled, or excessively charged. Menking also indicated that Dacotah Bank handed the issue over to the County Sheriff and the State's Attorney's office because of the excessive charges to Martin.

[¶17.]    Klinger's testimony as to why Martin took his vehicle to be repaired at Podzimek's shop was cumulative of statements made by Podzimek himself. In a letter of correspondence to Klinger, Podzimek explained that Martin brought his vehicle to Podzimek to fix because Podzimek had previously noticed that the vehicle was leaking antifreeze and that the engine was making a strange noise. Klinger's testimony regarding the amount of money Martin paid Podzimek, that the payment was made by check, and that the two checks were cancelled was also established by the testimony of Menking. Finally, Klinger's testimony that Podzimek had told Martin that a lien was placed on the vehicle was similar to the testimony of Martin's brother Bob Martin. Bob testified that Martin never received his pickup back from Podzimek before Martin died in October of 2016.

[¶18.]    Even if Klinger's testimony regarding Martin's statements were considered testimonial hearsay, the information within those statements was cumulative or corroborative of other evidence. The State's overall case against Podzimek was strong, regardless of the statement's admission into evidence. The admission was therefore harmless and did not prejudice Podzimek at trial.

[¶19.]    *2.    Whether the circuit court erred by admitting Podzimek's bank records, subpoenaed by the State, into evidence.*

[¶20.]    During the course of his investigation, Klinger subpoenaed Podzimek's bank account records from four different banks. Those bank records were then admitted as evidence at Podzimek's trial. Podzimek argues that records from three

of those banks were improperly obtained because the subpoenas to obtain the records were sent to the three banks via certified mail. Podzimek claims this violated state law. Because the bank records were improperly obtained, Podzimek claims that they should not have been admitted at trial. He argues that the circuit court erred in denying his motion to suppress the bank records.

[¶21.] "We review a denial of a motion to suppress de novo." *State v. Jones*, 2017 S.D. 59, ¶ 12, 903 N.W.2d 101, 106. A circuit court's "findings of fact will not be overturned unless clearly erroneous." *Id.* "The application of the law to those facts, or the 'court's legal rationale,' however, is a question of law reviewed de novo." *Id.* (quoting *State v. Thunder*, 2010 S.D. 3, ¶ 11, 777 N.W.2d 373, 377).

[¶22.] SDCL 37-24-16 provides that

> Service of any notice, demand, or subpoena under this chapter shall be personally served within this state, but if such cannot be obtained, substituted service therefor may be made in the following manner:
>
> > (1) Personal service thereof without the state; or
> >
> > (2) The mailing thereof by registered or certified mail to the last known place of business, residence, or abode of such persons for whom the same is intended; or
> >
> > (3) As to any person other than a natural person, in the manner provided in the rules of civil procedure as if a complaint or other pleading which institutes a civil proceeding has been filed; or
> >
> > (4) Such service as the circuit court for Hughes County, South Dakota, may direct in lieu of personal service within this state.

[¶23.] Podzimek claims that service of the subpoenas to the three banks in question by certified mail was improper because Klinger did not first attempt to serve the subpoenas to the bank by means of personal service. He asserts that service by certified mail is not an alternative to personal service under SDCL 37-24-

16, but rather a substitute if personal service is not possible. Podzimek, however, provides no authority to support this position.

[¶24.] In its memorandum decision regarding the motion to suppress the bank records, the circuit court determined that it did "not appear that the issuance of the subpoenas or the basis for the subpoenas to the other three banks were improper" because:

> [n]one of the three banks made any record of an objection to the manner in which they received the subpoena or attempted to quash the subpoena they received. They turned over the information that was requested in each subpoena to Agent Klinger. Defendant has provided no authority for this [c]ourt to conclude that an improperly served subpoena constitutes a warrantless or improper search and seizure. Had any of the three banks objected to compliance with the subpoena due to the manner of service, Agent Klinger may have been required to review SDCL 37-24-16 and proceed in a different manner. However, based upon the belief that service of the subpoena could be accomplished by certified mail and compliance with the subpoena by the banks, Agent Klinger had no reason to question the manner in which he proceeded.

[¶25.] The circuit court also noted that there was "no dispute [between the parties] that the State could lawfully seek the information that was obtained from the banks, and that issuance of a subpoena was an appropriate manner in which to get that information." Because of this, the court ultimately declined to suppress the bank records.

[¶26.] The circuit court did not err when it denied Podzimek's motion to suppress. Though Klinger may not have complied with SDCL 37-24-16 in serving the subpoenas to the bank, the bank did not object to the service or to turning over the requested information. Further, the parties agreed that the State was entitled to seek the requested information through the use of a subpoena.

[¶27.]     Podzimek next argues that "all of the subpoenas were deficient in their form and nature" pursuant to SDCL 15-6-45(a).[1]  However, as pointed out by the State, Podzimek failed to raise this issue at trial.  "Ordinarily an issue not raised before the [circuit] court will not be reviewed at the appellate level." *State v. Fischer*, 2016 S.D. 1, ¶ 12, 873 N.W.2d 681, 686-87 (quoting *Lindblom v. Sun Aviation, Inc.*, 2015 S.D. 20, ¶ 8 n.2, 862 N.W.2d 549, 552 n.2).  The issue is therefore waived and we will not address it.

[¶28.]     *3.     Whether the circuit court erred by denying Podzimek's post-trial motion to set aside his guilty verdicts.*

[¶29.]     Podzimek argues that the State failed to properly identify him as the person who committed the alleged offenses during the State's case-in-chief.

---

1.     SDCL 15-6-45(a) provides that

> [c]lerks of courts, judges, magistrates, notaries public, referees, and any other public officer or agency so empowered by § 1-26-19.1 or otherwise authorized by law in any matter pending before them, upon application of any person having a cause or any matter pending in court or before such agency, officer or tribunal, may issue a subpoena for a witness or witnesses.
>
> . . .
>
> A subpoena shall state the name of the court, or tribunal, the title of the action or proceeding, and shall command each person to whom it is directed to attend and give testimony at a time and place therein specified.  It shall state the name of the person or party for whom the testimony of the witness is required.  The seal of the court or officer, or tribunal, shall be affixed to the original and all copies, if issued by a court or officer having a seal.  If the subpoena is issued by an attorney, it shall be issued in the name of the presiding officer of the court, or tribunal in which the matter is pending and shall be attested and signed by the attorney, designating the party for whom he is attorney of record.

Because of this, Podzimek claims that the State failed to meet its burden of proof and that the guilty verdicts should have been set aside by the circuit court.

[¶30.]        "Denial of a motion for acquittal is reviewed de novo." *State v. Stone*, 2019 S.D. 18, ¶ 38, 925 N.W.2d 488, 500, reh'g denied (Apr. 16, 2019). "When conducting our review, we 'determine whether the evidence was sufficient to sustain the conviction.'" *Id.* (quoting *State v. Quist*, 2018 S.D. 30, ¶ 13, 910 N.W.2d 900, 904). "To do so, we ask whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Quist*, 2018 S.D. 30, ¶ 13, 910 N.W.2d at 904). "If the evidence, including circumstantial evidence and reasonable inferences drawn therefrom sustains a reasonable theory of guilt, a guilty verdict will not be set aside." *Id.* (quoting *State v. Martin*, 2017 S.D. 65, ¶ 6, 903 N.W.2d 749, 751).

[¶31.]        Podzimek asserts that during the State's case-in-chief, "there was no out-of-court identification of the defendant[,] . . . no description of the defendant testified to at trial[,] . . . no explicit identification of the defendant by any witness[,] . . . [and] no request by the state to have the record reflect that the defendant had been identified by a witness." As such, Podzimek claims that the record in his case is "devoid of any identification of Podzimek by the state" as the perpetrator of crimes charged in the indictments.

[¶32.]        The State first claims that Podzimek has waived the issue of identification because he did not raise the issue at trial, but only in his post-trial motion to set aside his guilty verdicts. But regardless of whether or not Podzimek

has waived the issue, his contention that he was not properly identified still fails. This Court has held that the question of a defendant's identity in a criminal case is a question of fact to be determined by a jury. *Carothers*, 2006 S.D. 100, ¶ 32, 724 N.W.2d at 621. Further, "[w]e have recognized that a courtroom identification is not necessary when the evidence is sufficient to establish the inference that the defendant is the person who committed the crime." *State v. Condon*, 2007 S.D. 124, ¶ 20, 742 N.W.2d 861, 867.

[¶33.] The record reveals a wealth of evidence available from which the jury could have properly identified Podzimek. The best example is Podzimek's own written statement that was submitted to Klinger. In the statement, Podzimek identifies himself as the person who worked on Martin's vehicle. Both parties stipulated to the entry of that statement into the record. During his testimony, Bob Martin also pointed out Podzimek in court as the person who had performed work on his brother's pickup. As to the sales tax charges, Podzimek stipulated to the entry of his own tax returns. The business listed on the tax returns matched the business listed on invoices billed to Martin for work done on his vehicle. There was sufficient evidence to establish Podzimek's identity as the person who committed the crimes charged in the indictments. The circuit court did not err in denying Podzimek's motion to set aside his guilty verdicts.

## Conclusion

[¶34.] Even if Klinger's testimony regarding statements made to Klinger by Martin constituted inadmissible hearsay, the circuit court's admission of those statements was harmless error. Further, the circuit court did not err in admitting

-13-

Podzimek's bank records into evidence, or in denying Podzimek's post-trial motion to set aside his guilty verdicts. We affirm.

[¶35.] KERN, JENSEN and SALTER, Justices, concur.

[¶36.] MEIERHENRY, Retired Justice, concurs in part and concurs in result in part.


MEIERHENRY, Retired Justice (concurring in part and concurring in result in part).

[¶37.] Podzimek claims he was denied his constitutional right to confront and cross-examine an unavailable witness against him. He stated his issue as follows: "Did the trial court err in admitting into evidence statements made by a decedent (Martin) to law enforcement officials?" The majority opinion reframes the issue and avoids answering the key question whether admitting the testimony violated Podzimek's Sixth Amendment right to confrontation. In my view, the constitutional question should be addressed, and this Court should at a minimum give guidance on whether Martin's statements to the investigating officer are testimonial hearsay giving rise to the Sixth Amendment guarantees.

[¶38.] The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" U.S. Const. amend. VI. As the United States Supreme Court explained in *Crawford v. Washington*:

> The text of the Confrontation Clause reflects this focus [on testimonial hearsay]. It applies to "witnesses" against the accused—in other words, those who "bear testimony." 2 N. Webster, An American Dictionary of the English Language

(1828). "Testimony," in turn, is typically "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not.

541 U.S. 36, 51, 124 S. Ct. 1354, 1364, 158 L. Ed. 2d 177 (2004). The *Crawford* Court further recognized that statements made to law enforcement are testimonial. "Whatever else the term ["testimonial"] covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and *to police interrogations*." *Id.* at 68, 124 S. Ct. at 1374 (emphasis added). Indeed, "[t]hese are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed." *Id.* Notably, however, the word "interrogation" is used "in its colloquial, rather than any technical legal, sense." *Id.* at 53 n.4, 124 S. Ct. at 1365 n.4; *accord Davis v. Washington*, 547 U.S. 813, 822, 126 S. Ct. 2266, 2273, 165 L. Ed. 2d 224 (2006).

[¶39.]     In two later cases decided together, *Davis* and *Hammon v. Indiana*, the United States Supreme Court recognized that not all police interrogations result in testimonial hearsay and devised the "primary purpose test" to identify testimonial versus nontestimonial statements. 547 U.S. at 822, 126 S. Ct. at 2273-74. In *Davis*, the Court determined that statements made to a 911 operator were nontestimonial because the primary purpose of the interrogation was "to enable police assistance to meet an ongoing emergency." *Id.* at 822, 126 S. Ct. at 2273. In contrast, the Court in *Hammon*, concluded that the victim's statements made to a police officer who had responded to a domestic disturbance call were testimonial because "there was no emergency in progress" and "the interrogation was to investigate a possible crime."

*Id.* at 829-30, 126 S. Ct. at 2278. In differentiating the testimonial from nontestimonial, the Court explained that "[s]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Id.* at 822, 126 S. Ct. at 2273. However, statements "are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."[2] *Id.* at 822, 126 S. Ct. at 2274.

[¶40.] Here, during the jury trial, Martin's statements to law enforcement were introduced through Ray Klinger, the State's investigator from the Attorney General's Office, Consumer Protection Division. Agent Klinger was investigating Martin's formal complaint against Podzimek. On direct examination, Agent Klinger testified to Martin's statements as follows:

> **State:** Did you speak with Mr. Martin?
>
> **Agent Klinger:** Yes, I did.

---

2.  Since *Crawford* and *Davis*, the United States Supreme Court continues to employ the primary purpose test. *See, e.g., Michigan v. Bryant*, 562 U.S. 344, 131 S. Ct. 1143, 179 L. Ed. 2d 93 (2011); *accord Ohio v. Clark*, ___U.S. ___, 135 S. Ct. 2173, 2180, 192 L. Ed. 2d 306 (2015). In *Bryant*, police officers discovered the victim mortally wounded, and the victim made statements to the officers. The Supreme Court concluded that the "circumstances of the interaction between" the victim and "the police objectively indicate that the 'primary purpose of the interrogation' was to 'enable police assistance to meet an ongoing emergency.'" 562 U.S. at 349, 131 S. Ct. at 1150. The Court, therefore, held that the statements were not testimonial. In *Clark*, the statements were not made to law enforcement; they were made by a three year old to preschool teachers. Nevertheless, the Supreme Court applied the primary purpose test and concluded that the statements were not testimonial. ___ U.S. at ___, 135 S. Ct. at 2180.

**State:** Okay. Was Mr. Martin cooperative with the investigation?

**Agent Klinger:** Yes, he was.

**State:** What reason did Mr. Martin give for making the complaint?

**Agent Klinger:** He felt that the charges that he was being billed for on the vehicle were excessive and that he had not had his vehicle for over a year and he wanted to get his vehicle back.

**State:** Did you speak with Mr. Martin about why he took his vehicle to the Defendant?

**Agent Klinger:** Yes, I did.

**State:** What did he say?

**Agent Klinger:** He said that he had stopped there to visit with Mr. Podzimek. After he had left he stated that he received a phone call from Mr. Podzimek saying that he thought that his vehicle had a coolant leak or a fluid leak, I should say, and that he should possibly bring it back to have it looked at.

**State:** Okay. How much was Mr. Martin charged for the repairs done to the vehicle?

**Agent Klinger:** Just over $52,000.

**State:** Did Mr. Martin tell you how he paid the Defendant?

**Agent Klinger:** With personal check.

**State:** Did Mr. Martin tell you how much he had actually given to the Defendant?

**Agent Klinger:** Well, he had written multiple checks that totaled, I believe, 39,800, approximately. And that he'd also written two other checks that he had stopped payment on that were right at $13,000.

**State:** And did Mr. Martin ever mention that a lien had been placed on his vehicle by the Defendant?

**Agent Klinger:** He stated that Mr. Podzimek stated that he was going to place lien on it or that he had placed a lien on it due to the canceled checks.

. . .

**State:** And you indicated earlier you spoke with Mr. Martin before his death about this [the invoices]?

**Agent Klinger:** That's correct.

> **State:** When you first spoke with Mr. Martin, did he have any of these invoices?
>
> . . .
>
> **Agent Klinger:** No, he did not.

[¶41.] Podzimek argues that Martin's statements to Agent Klinger were testimonial and should have been excluded. Without question, Martin's statements were made in response to a law enforcement interrogation. Agent Klinger was a certified law enforcement officer hired by the Consumer Protection Division to investigate complaints and had been directed to investigate Martin's complaint. As part of his investigation, he questioned Martin.

[¶42.] An objective examination of Agent Klinger's questions and Martin's answers confirm that the primary purpose of the interview was "to investigate a possible crime" and to "establish or prove past events potentially relevant" to criminal charges against Podzimek. *See Davis*, 547 U.S. at 822, 126 S. Ct. at 2273. In fact, Agent Klinger testified to no other purpose. Clearly, there was no ongoing emergency or other reason for the interrogation. Therefore, applying well-settled precedent, I would conclude that Martin's statements were testimonial. Because Martin's out-of-court statements to Agent Klinger were testimonial *and* Podzimek did not have an opportunity to cross-examine Martin, I would hold that the circuit court erred in admitting the statements.

[¶43.] Also noteworthy is the circuit court's erroneous reasoning as to admissibility. The circuit court determined that Martin's statements were admissible "so long as the individuals to whom Mr. Martin made these statements testify at trial and are available for cross-examination[.]" This reasoning is misguided. Podzimek's opportunity to cross-examine the law enforcement officer

concerning the out-of-court statements of the unavailable witness does not cure a violation of the Confrontation Clause. To be sure, the United States Supreme Court has made clear that the Sixth Amendment mandates that a defendant have the opportunity to cross-examine the *unavailable witness* to satisfy the guarantee of confrontation. "Where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: *confrontation*." *Crawford*, 541 U.S. at 68-69, 124 S. Ct. at 1374 (emphasis added).

[¶44.]     Nevertheless, and although the circuit court erred, I agree with the majority opinion that a violation of the Confrontation Clause is subject to the harmless error review. On this point, the United States Supreme Court has set forth that the proper harmless error inquiry:

> is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case *depends upon a host of factors*, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

*Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S. Ct. 1431, 1438, 89 L. Ed. 2d 674 (1986) (emphasis added).

[¶45.]     Here, the majority opinion concludes that the circuit court's error in admitting the statements was harmless beyond a reasonable doubt. While certain statements made by Martin could be regarded as cumulative to other evidence,

other factors also enter into the analysis. Martin's inadmissible hearsay statements established facts relevant to the charged crimes, but most of the evidence against Podzimek came from other witnesses. Even Podzimek's own testimony provided corroborating evidence on many of the material statements made by Martin. Additionally, Podzimek in his cross-examination of Agent Klinger presented several more of Martin's statements that were favorable to the defense. Finally, the overall strength of the State's case is compelling. Therefore, I agree that the State proved beyond a reasonable doubt that the error was harmless. I also agree with the majority opinion on the remaining issues.